DAVID M. STERN (Admitted *Pro Hac Vice*)
KORIN A. ELLIOTT (Admitted *Pro Hac Vice*)
KLEE, TUCHIN, BOGDANOFF & STERN LLP
1999 Avenue of the Stars, 39th Floor
Los Angeles, California 90067
Telephone:     (310) 407-4000
Facsimile:     (310) 407-9090

-and-

WILLIAM A. BROSCIOUS (VA State Bar No. 27436)
KEPLEY BROSCIOUS & BIGGS, PLC
2211 Pump Road
Richmond, Virginia  23233
Telephone:     (804) 741-0400, ext. 202

Attorneys for Appellant
PARAMOUNT HOME ENTERTAINMENT INC.

## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF VIRGINIA
### (Richmond Division)

| | |
|---|---|
| In re<br><br>CIRCUIT CITY STORES, INC., *et al.*,<br><br>       Debtors. | USBC Case No.:  08-35653-KRH<br>(Jointly Administered) |
| PARAMOUNT HOME ENTERTAINMENT INC.<br><br>       Appellant,<br><br>    v.<br><br>CIRCUIT CITY STORES, INC., et al.,<br><br>       Appellees. | Case No.  3:10-cv-00316-JRS |

### APPELLANT PARAMOUNT HOME ENTERTAINMENT INC.'S OPENING BRIEF

## TABLE OF CONTENTS

I.      INTRODUCTION ................................................................................................. 1

II.     STATEMENT OF JURISDICTION.................................................................... 4

III.    ISSUES PRESENTED......................................................................................... 5

IV.     APPLICABLE STANDARD OF REVIEW ....................................................... 6

V.      STATEMENT OF THE CASE............................................................................ 7

VI.     ARGUMENT ..................................................................................................... 10

        A.      Under Bankruptcy Code Section 546(c), the Only Requirement to
                Establish a Right of Reclamation is Submission of a Timely Reclamation
                Demand. ................................................................................................... 10

        B.      Paramount's Compliance with the Bankruptcy Court's Reclamation
                Procedures Order Further Supports Its Right to Relief.......................... 14

        C.      The Bankruptcy Court's Additional Findings Rendering Paramount's
                Right of Reclamation Valueless Were Equally Erroneous. ................... 18

                1.      Prior Liens Do Not Automatically Extinguish Reclamation Rights........ 18

                2.      The Right of Reclamation Extends to Proceeds and Relevant
                        Discovery Must be Allowed. ................................................... 24

                3.      The 2005 BAPCPA Amendments were Intended to Enhance the
                        Rights of Reclaiming Vendors and Should Not be Read to Strip
                        Reclaiming Vendors of Their Rights......................................... 26

VII.    CONCLUSION................................................................................................... 29

## TABLE OF AUTHORITIES

**Page(s)**

**FEDERAL CASES**

*In re Advanced Marketing Svs., Inc.,*
  360 B.R. 421 (Bankr. D. Del. 2007) .......................................................................20

*In re Adventist Living Ctrs.,*
  52 F.3d 159 (7th Cir. 1995) ...........................................................................10, 11

*Anderson v. Liberty Lobby, Inc.,*
  477 U.S. 242 (1986).........................................................................................25

*In re ARLCO, Inc.,*
  239 B.R. 261 (Bankr. S.D.N.Y. 1999) ........................................................20, 24, 30

*Celotex Corp. v. Catrett,*
  477 U.S. 317 (1986).........................................................................................25

*In re Child World,*
  145 B.R. 5 (Bankr. S.D.N.Y. 1992) ..............................................................24, 30

*Dairy Mart Convenience Stores, Inc.,*
  302 B.R. 128, 134 (Bankr. S.D.N.Y. 2003) ....................................................19, 30

*In re Dana Corporation,*
  367 B.R. 409 (Bankr. S.D.N.Y. 2007) ...................................... 4, 18, 19, 20, 21, 23

*In re DeAngelis Tangibles, Inc.,*
  238 B.R. 96 (Bankr. M.D. Pa. 1999) ...................................................................16

*Dewsnup v. Timm,*
  502 U.S. 410 (1992).........................................................................................27

*In re DFI Proceeds, Inc.,*
  2009 Bankr. LEXIS 4296 (Bankr. N.D. Ind. Dec. 21, 2009) ..................................15

*In re Flagstaff Foodservice Corp.,*
  32 B.R. 820 (Bankr. S.D.N.Y. 1983).....................................................................11

*In re Georgetown Steel Co.,*
  318 B.R. 340 (Bankr. D.S.C. 2004) ....................................11, 15, 16, 19, 20, 24, 30

*In re Griffin Retreading Co.,*
  795 F.2d 676 (8th Cir. 1986) .............................................................11, 13, 23, 28

In re Hartz Foods, Inc.,
    264 B.R. 33 (Bankr. D. Minn. 2001) ..........................................................................11, 19, 30

In re J.T.R. Corp.,
    958 F.2d 602 (4th Cir. 1992) .......................................................................................13

Jennings v. Univ. of N. Car.,
    482 F.3d 686 (4th Cir. 2007) (*en banc*).......................................................................6

Keene Corp. v. United States,
    508 U.S. 200 (1993)......................................................................................................27

Manly v. Ohio Shoe Co.,
    25 F.2d 384 (4th Cir. 1928) ....................................................................................28, 30

Miller v. Sav. Bank of Balt.,
    22 B.R. 479 (D. Md. 1982) .........................................................................................12

Minter v. Wells Fargo Bank,
    593 F. Supp. 2d 788 (D. Md. 2009) ...........................................................................25

Pester Refining Co. v. Ethyl Corp. (In re Pester Refining Co.),
    964 F.2d 842 (8th Cir. 1992) ...............................................................................19, 24, 30

In re Phar-Mor, Inc.,
    301 B.R. 482 (Bankr. N.D. Ohio 2003), *aff'd* 534 F.3d 502 (6th Cir. 2008)..........................22, 23

Phar-Mor, Inc. v. McKesson Corp. (In re Phar-Mor, Inc.),
    534 F.3d 502 (6th Cir. 2008), *cert. denied*, 129 S. Ct. 2053 (Apr. 27, 2009).... 4, 20, 21, 22, 28, 30

In re Pilgrim's Pride Corp.,
    2009 Bankr. LEXIS 3635 (Bankr. N.D. Tex. November 12, 2009) .................................20, 30

In re Saco Local Dev. Corp.,
    711 F.2d 441 (1st Cir. 1983)........................................................................................4

In re Semcrude, L.P.,
    416 B.R. 399 (Bankr. D. Del. 2009) ...........................................................................15

Sheehan v. Peveich,
    574 F.3d 248 (4th Cir. 2009)........................................................................................6

Stancill v. Harford Sands Inc. (In re Harford Sands Inc.),
    372 F.3d 637 (4th Cir. 2004) .......................................................................................16

United States v. Towers (In re Pacific Atl. Trading Co.),
    33 F.3d 1064 (9th Cir. 1994) .......................................................................................4

<u>United States v. Westside Bank</u>,
732 F.2d 1258 (5th Cir. 1984) ........................................................................24

<u>In re Victory Mkts.</u>,
212 B.R. 738 (Bankr. N.D.N.Y. 1997) .......................................................24, 30

<u>Viking Assocs. v. Drewes (In re Olson)</u>,
120 F.3d 98 (8th Cir. 1997) ..............................................................................4

<u>Webster v. Rumsfeld</u>,
156 Fed. Appx. 571 (4th Cir. 2005) ................................................................25

<u>In re Western Farmers Ass'n.</u>,
6 B.R. 432 (Bankr. D. Wash. 1980) ................................................................23

<u>Williford v. Armstrong World Industries, Inc.</u>,
715 F.2d 124 (4th Cir. 1983) ..........................................................................12

## FEDERAL STATUTES AND RULES

11 U.S.C. § 362 .........................................................................................................12

11 U.S.C. § 503(b)(1) ...............................................................................................6

11 U.S.C. § 503(b)(9) .............................................................................1, 6, 8, 15, 26, 27

11 U.S.C. §546 ................................................................................... *passim*

28 U.S.C. § 157(b)(2)(B) ..........................................................................................4

28 U.S.C. § 158(a)(1) ...............................................................................................4

FED. R. BANKR. P. 3001(f) ......................................................................................16

FED. R. CIV. P. 56(f) ...........................................................................................2, 6, 22

## STATE STATUTES

UCC § 2-702 .............................................................................................................19

Va. Code Ann. § 8.2-702 (2009).............................................................................28

## OTHER AUTHORITIES

Lisa Gretchko, *Seller Beware! Is your Reclamation Claim as Strong as you Think it Is?*,
22-2 Am. Bankr. Inst. J. 20 (Mar. 2003) ........................................................................ 21

Hon. Cecilia G. Morris, *Reclamation Rights after BAPCPA: 11 U.S.C. §§ 546(a) and 503(b)(9)*,
ABI Southeast Bankruptcy Workshop (July 25-28, 2007) ............................................. 1

Sally S. Neely, *How BAPCPA Affects the Rights of Unpaid Prepetition Sellers of Goods,*
ABI Southeastern Bankruptcy Law Institute (April 3-5, 2008) ...................................... 1

Deborah L. Thorne, *Last in Line: The Courts Begin to Speak: Deciphering 546(c)*,
26-3 Am. Bankr. Inst. J. 38 (Apr. 2007) ...................................................................... 21

4 White & Summers, UNIFORM COMMERCIAL CODE, § 32-11 (6th ed. 2005) ................................. 24

# I.
## INTRODUCTION

This appeal concerns an important creditor protection, the right of reclamation, which was strengthened by Congress when it enacted the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 (BAPCPA), Pub.L. 109-8, 119 Stat. 23 (enacted April 20, 2005; eff. October 17, 2005), and amended 11 U.S.C. (Bankruptcy Code) § 546(c).[1]  The decision below, however, did not acknowledge the protections provided by revised Section 546(c) and even cut back on those provided by prior law.   In order to correct those errors, Paramount Home Entertainment Inc. ("Paramount") brings this appeal.

Section 546(c),[2] in pertinent part, grants "a seller of goods that has sold goods to the debtor, in the ordinary course of such seller's business, [the right] to reclaim such goods if the debtor has received such goods while insolvent, within 45 days before the date of the commencement of a case under this title, but such seller may not reclaim such goods unless such seller demands in writing reclamation of such goods (A) not later than 45 days after the date of receipt of such goods by the debtor; or (B) not later than 20 days after the date of commencement of the case, if the 45-day period expires after the commencement of the case."

---

[1]   Sally S. Neely, *How BAPCPA Affects the Rights of Unpaid Prepetition Sellers of Goods, ABI Southeastern Bankruptcy Law Institute* (April 3-5, 2008)( "The Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 enhanced the rights of creditors that sold goods to a debtor prepetition by, among other things, … expanding a seller's right to reclaim goods.") (found at http://www.sbli-inc.org/archive/2008/documents/NEELY%20FINAL%20Sally%20Neely%20SBLI%202008%20Paper%20re%20Rights%20and%20Reclamation.pdf).   Prior versions of this article are quoted in many of the opinions cited in the Bankruptcy Court by both parties; Hon. Cecilia G. Morris, *Reclamation Rights after BAPCPA: 11 U.S.C. §§ 546(a) and 503(b)(9)*, ABI Southeast Bankruptcy Workshop (July 25-28, 2007) ("With the amendments from BAPCPA … more goods are now subject to the right of reclamation….  [T]he amendments provide greater, albeit more complicated, reclamation rights to sellers of goods….") (found at http://www.abiworld.org/committees/newsletters/utc/vol5num3/3.pdf).

[2]   Unless otherwise stated, statutory references are to title 11 of the United States Code, 11 U.S.C. §§ 101 et seq. (the "Bankruptcy Code").

1

The plain language of the statute makes the reclamation remedy an easy one for a vendor to invoke. All it need do is make a timely demand and show that the goods that are subject to reclamation were sold to the debtor within 45 days prior to the bankruptcy petition date and were sold in ordinary course. It is undisputed that Paramount complied with the statutory requirements. Notwithstanding, the Bankruptcy Court granted summary judgment,[3] rejecting entirely Paramount's right of reclamation. Not only did the Bankruptcy Court's decision fail to apply the plain language of Section 546(c), it also ignored Paramount's compliance with the Bankruptcy Court's own order specifically setting forth the procedures a reclaiming vendor had to follow in order to perfect claims. The Bankruptcy Court's decision is contrary to other circuit-level authority and disregards the language, history and legislative purpose of the relevant statutes. Finally, notwithstanding Paramount's careful compliance with Rule 56(f) of the Federal Rules of Civil Procedure – in timely propounding discovery and in articulating how the incomplete responses prejudiced its ability to defend itself – the Bankruptcy Court, as noted, granted summary judgment when that remedy was plainly not yet (if ever) available.

This brief addresses these errors as follows:

- In Part VI.A, Paramount explains how Section 546(c) was modified in 2005, such that the only action Paramount was required to take in order to perfect its right to reclamation was, in the words of the statute, to "demand[] in writing reclamation of such goods … not later than 20 days after the date of commencement of the [bankruptcy] case." As it was undisputed that Paramount did precisely that, the fulcrum upon which the Bankruptcy Court based its decision – that "[t]he right of

---

[3] On March 4, 2010, the Honorable Kevin R. Huennekens, Judge for the United States Bankruptcy Court of the Eastern District of Virginia (the "Bankruptcy Court") entered the *Order Granting Motion for Summary Judgment* (the "Order"), with the accompanying *Memorandum Opinion* (the "Opinion"). Paramount appealed both the Order and the Opinion. *See Appellants' Record on Appeal* ("ROA"), at 2039-40, filed concurrently.

reclamation is not self-effectuating . . . The reclamation seller must take some affirmative action to pursue its claim.  The failure to take appropriate action to assert the right may result in the loss of the right . . . Accordingly, under the present form of Bankruptcy Code § 546(c), enforcement of a reclamation demand in a bankruptcy case would require, at a minimum, a motion for relief from the automatic stay," ROA: 2026 – is flat wrong.

- As Paramount sets out in Part VI.B, compliance with the statute was only a small part of what it did.  Paramount also complied with an order (the "Reclamation Procedures Order"), ROA: 340-47, that the Bankruptcy Court issued two days into the bankruptcy case that provided precise instructions for filing a reclamation demand.  The Reclamation Procedures Order specifically prescribed where to file and what to include in a reclamation demand.  ROA: 343-44 (¶¶ 5(a)-(b)).  The Reclamation Procedures Order further established a 120-day period for the debtors, whose cases were consolidated as *In re Circuit City Stores, Inc., et al.*, Case No. 08-35653 (Bankr. E.D. V.A.) (collectively referred to herein as the "Debtor"), to examine the Reclamation Demands and to "advise each Reclamation Claimant of the allowed amount, if any, of the Reclamation Demand (the 'Allowed Reclamation Amount').  Absent receipt of any notice setting forth such an Allowed Reclamation Amount, the Debtor[] shall be deemed to have rejected the Reclamation Demand."  ROA: 344 (¶ 5(c)).  Finally, the order authorized the Debtor to pay the Allowed Reclamation Amount or to return the goods.  *Id.* (¶ 5(d)).  As noted, Paramount complied with the Reclamation Procedures Order to the letter, but the Bankruptcy Court rendered Paramount's compliance, and effectively its own order, a nullity.  ROA: 2028-29.

- This erroneous process continued on several substantive issues.  Although the statute provides that the rights of a reclaiming vendor are "subject to the prior rights of a holder of a security interest," the Bankruptcy Court interpreted "subject to" as

3

synonymous with "extinguishing" and held that "[t]he prior liens of the Pre-petition Lenders rendered the Reclamation Claims valueless at the commencement of this case as anything other than general unsecured, non-priority claims."  ROA: 2030. Notably, the Bankruptcy Court did so by following a single New York bankruptcy court case, In re Dana Corporation, 367 B.R. 409, 421 (Bankr. S.D.N.Y. 2007), and rejecting the view of the only circuit level decision to deal with the question, Phar-Mor, Inc. v. McKesson Corp. (In re Phar-Mor, Inc.), 534 F.3d 502, 507 (6th Cir. 2008), *cert. denied*, 129 S. Ct. 2053 (Apr. 27, 2009).  *See* Part VI.C.1.

- The Bankruptcy Court further rejected Paramount's contention that it was entitled to the proceeds of its own goods, although Paramount was frustrated in its ability to do any discovery to determine whether its goods, which were subject to a reclamation demand were used, in whole, in part or not at all, to satisfy any alleged prior liens.  *See* Part VI.C.2.

- Finally, the Bankruptcy Court interpreted Section 546(c), which Congress clearly amended in 2005 to enhance the rights of reclaiming vendors, to cut back, even to obliterate, the rights of reclaiming vendors.  *See* Part VI.C.3.

For all these reasons, the decision below should be reversed.

## II.
## STATEMENT OF JURISDICTION

The Order is a final order entered pursuant to the core bankruptcy jurisdiction exercised by the Bankruptcy Court pursuant to 28 U.S.C. § 157(b)(2)(B).  This Court has jurisdiction over the appeal pursuant to 28 U.S.C. § 158(a)(1).  In re Saco Local Dev. Corp., 711 F.2d 441, 448 (1st Cir. 1983) (finding that bankruptcy court order determining priority of claim was final appealable order); *see also* Viking Assocs. v. Drewes (In re Olson), 120 F.3d 98, 101 (8th Cir. 1997) (order limiting size of claim is final appealable order); United States v. Towers (In re Pacific Atl. Trading Co.), 33 F.3d 1064, 1065 (9th Cir. 1994) (order granting third rather than first priority to IRS claim appealable).

**III.**
**ISSUES PRESENTED**

1.      Whether the Bankruptcy Court erred in holding that a vendor who has served an otherwise valid reclamation demand must take additional action including, at a minimum, seeking and obtaining relief from the automatic stay, in order to be able to enforce its right of reclamation under Section 546.

2.      Whether the Bankruptcy Court erred in holding that compliance with the reclamation procedures ordered by the Bankruptcy Court gave Paramount nothing more than an unenforceable right to reclaim goods.

3.      Whether the Bankruptcy Court erred in holding that Paramount's reclamation demand had to be "denied" by the Bankruptcy Court in order for Paramount to be entitled to relief and whether the Bankruptcy Court erred in holding that the reclamation demand served by Paramount on the Debtor was never "denied" by the Bankruptcy Court despite the fact that (a) the court approved reclamation procedures which provided that, if the Debtor did not give notice to the claimant of the allowed amount of the reclamation demand by March 10, 2009, the demand was deemed rejected and (b) Paramount received no such notice from the Debtor or otherwise of an allowed amount.

4.      Whether the Bankruptcy Court erred in holding that Paramount's reclamation claim was independently rendered valueless as anything other than a general unsecured, non-priority claim because:

   a.   At the commencement of the case, a pre-petition lender had a floating blanket lien on the Debtor's inventory and the amount owed to the pre-petition lender on the Petition Date exceeded the amount of Paramount's reclamation claim.

   b.   The Debtor refinanced its pre-petition debt and entered into a post-petition, debtor-in-possession, secured financing facility (the "DIP Facility") thereby "using" the Reclamation Goods as collateral even if the

5

Debtor was still in possession of all of the Reclamation Goods at the time of the refinancing.

    c.   The Debtor sold its entire inventory during the going-out-of-business sales, regardless of whether the Reclamation Goods were still in the Debtor's possession at the time they had raised sufficient funds to satisfy the DIP Facility lenders.

5.    Whether the Bankruptcy Court erred in holding that a reclamation right, under both state law and Section 546(c), never extends to proceeds of the goods.

6.    Whether the Bankruptcy Court erred in granting summary judgment in light of the pending and anticipated discovery and the showing made by Paramount of the need for responses to outstanding discovery and to follow-up discovery, which showing was in full compliance with Rule 56(f) of the Federal Rules of Civil Procedure.

7.    Whether the Bankruptcy Court erred in holding that after the BAPCPA amendments to Section 546(c), a reclaiming vendor may be granted an administrative expense claim only if (a) it satisfies Section 503(b)(9) or (b) it establishes a benefit to the estate so that the claim would qualify as an administrative expense under Section 503(b)(1).  And, even if it was correct, whether the Bankruptcy Court erred in not providing Paramount the opportunity, after full discovery, to make a showing of benefit to so qualify.

## IV.
## APPLICABLE STANDARD OF REVIEW

As Paramount's reclamation claim was disallowed by the Bankruptcy Court at the summary judgment stage, this Court should review the Order *de novo*.  Jennings v. Univ. of N. Car., 482 F.3d 686, 694 (4th Cir. 2007) (*en banc*); *see also* Sheehan v. Peveich, 574 F.3d 248, 252 (4th Cir. 2009) (issues of law reviewed *de novo*).

6

**V.**
**STATEMENT OF THE CASE**

On November 10, 2008 (the "Petition Date"), the Debtor filed voluntary petitions under chapter 11 of the Bankruptcy Code.  Also on the Petition Date, the Debtor sought – and was granted the same day– authority to enter into the DIP Facility.  ROA: 29-333.  On November 12, 2008, the Debtor used proceeds of the DIP Facility to repay all outstanding obligations under its pre-petition credit facility, which was secured by, among other things, all of its inventory.  ROA: 928-29.  The DIP Facility was, in turn, also secured by, among other things, the Debtor's inventory and the proceeds thereof.  *Id.* at 929.

On November 13, 2008, on motion of the Debtor, the Court entered the Reclamation Procedures Order and made that order final on December 11, 2008, establishing, among other things, procedures for the filing of a valid reclamation demand and procedures for the Debtor's handling of such demands.  ROA: 1-28; 371-79.  In pertinent part, the Reclamation Procedures Order provided:

1.  Precise instructions for filing a reclamation demand, including where to file and what to include.  ROA: 375-76.

2.  A 120-day period for the Debtor to examine the Reclamation Demands and to "advise each Reclamation Claimant of the ***allowed amount, if any, of the Reclamation Demand*** (the 'Allowed Reclamation Amount').  Absent receipt of any notice setting forth such an Allowed Reclamation Amount, the Debtor[] shall be deemed to have rejected the Reclamation Demand."  (emphasis added).  *Id.* at 376.

3.  Authorization for the Debtor to pay the Allowed Reclamation Amount or to return the goods.  *Id.* at 376-77.

Paramount served its reclamation demand (the "Reclamation Demand") on November 11, 2008 in accordance with the not-yet-entered Reclamation Procedures Order and Section 546(c) and demanded the return of the products delivered to and accepted by the Debtor while insolvent in the ordinary course of business within the 45-day period preceding the Petition Date (the "Reclamation Goods"), which products had a total value of $11,600,840.04.  ROA: 335-36.

On December 10, 2008, the Court entered an order setting a deadline for filing proofs of claim, ROA: 349-70, and provided notice of that deadline two days later.  ROA: 381-90. Paramount timely filed its proof of claim, Claim No. 9681, on January 30, 2009.  ROA: 392-99. In the proof of claim, Paramount asserted a right to payment in the amount of $16,497,463.67,

and reiterated its entitlement to the Reclamation Goods, as to which it asserted priority in the amount of $11,600,840.04.  *Id.*

From January 17, 2009 through March 8, 2009, the Debtor held Court-approved going-out-of-business ("GOB") sales.   ROA: 535.   In the Debtor's Disclosure Statement filed in connection with its chapter 11 plan of reorganization (the "Disclosure Statement"), the Debtor represented that by the end of the GOB sales, the DIP Facility had been paid in full.  *Id.* at 562. As the Debtor's chapter 11 plan also provides for payment of some unsecured creditors, *see id.* at 537-41, it is clear that after the satisfaction of the Debtor's secured lenders, there are proceeds remaining for distribution.[4]

Because the Debtor never notified Paramount that its reclamation claim was allowed or disallowed, pursuant to the Reclamation Procedures Order, Paramount's Reclamation Demand was deemed rejected on March 10, 2009, *i.e.*, two days after the Debtor concluded its GOB sales.

On June 22, 2009, the Debtor objected to Paramount's Reclamation Claim.  ROA: 422-27. Paramount responded and clarified its claim as consisting of the following three components:

1. A Section 503(b)(9) claim, Claim No. 1009, in the amount of $3,133,634.57. This amount is not at issue here.

2. A reclamation claim (the "Reclamation Claim"), which may be denominated as an *in rem* demand for the proceeds of the goods subject to reclamation up to $11,600,840.04 (inclusive of the amount entitled to priority pursuant to Section 503(b)(9)).  This amount is at issue here.

3. A general pre-petition claim, Claim No. 9681, for $16,497,463.67 less amounts which are allowed in connection with the Reclamation Claim and the Section 503(b)(9) claim.  This amount is not at issue here.

ROA: 503.

To ascertain preliminary information relevant to its reclamation rights, Paramount propounded formal discovery on the Debtor, serving both interrogatories and requests for

---

[4] More precise information was sought in Paramount's outstanding discovery requests to which the Debtor either objected or did not respond.  ROA: 894-900; 902-06; 1147-54.

documents on the Debtor on November 23, 2009.  ROA: 894-900; 902-06.  The Debtor and Paramount informally agreed that the Debtor had through December 31, 2009 to respond to interrogatories numbers 7, 8 and 9, as the responses to those interrogatories would be particularly crucial to Paramount's arguments regarding its right of reclamation, and that responses to all other discovery could be postponed until after the summary judgment hearing.  ROA: 1249 (¶ 9).  While Paramount awaited the Debtor's responses to these interrogatories and after the Debtor had continued the hearing on its Objection to Paramount's Reclamation Claim for months, the Debtor filed its motion for summary judgment (with accompanying brief, the "Summary Judgment Motion") on December 18, 2009.  ROA: 909-16; 918-1145.

On December 28, 2009, the Debtor served its discovery responses.  ROA: 1147-98.  From the discovery responses, Paramount learned that according to the Debtor's records, it held $14,571,763.62 of Paramount's goods in its inventory at the end of business on November 9, 2008 and that the Debtor no longer had any of Paramount's goods in its possession.  ROA: 1151-52; 1156-98.  Paramount did not receive any information in response to interrogatory number 8, which asked the Debtor to state the amount of proceeds it received from the sale of Paramount goods from the Petition Date through the present time in the form of a daily tally or broken down by the shortest periods possible.  ROA: 1152-53.  The Debtor objected to the interrogatory but also stated that this data was not available because its record-keeping systems did not track sales in this manner.  *Id.*  Among the other key information which the Debtor has not yet supplied is a daily accounting of the amount of debt secured by the inventory.  ROA: 1250-51 (¶ 11(a)-(d)).

Extensive briefing on the Summary Judgment Motion ensued.  ROA: 1199-1245; 1426-1808; 1810-1831; 1833-2011.  On January 14, 2010, the Court held a hearing on the Summary Judgment Motion and the responses thereto.  ROA: 1346-49; 1869-1989.  The Court took the matter under submission and ruled on March 4, 2010, disallowing Paramount's priority claim and relegating it to general unsecured status.  ROA: 2037.  Paramount timely filed its *Notice of Appeal* on March 18, 2010.  ROA: 2039-70.

# VI.
# ARGUMENT

*A.*     *Under Bankruptcy Code Section 546(c), the Only Requirement to Establish a Right of Reclamation is Submission of a Timely Reclamation Demand.*

The plain language of Section 546(c), as revised in 2005 as part of the BAPCPA amendments, sets forth the only requirements for establishing a valid right of reclamation. Section 546(c)(1) provides, in relevant part:

> Except as provided by subsection (d) of this section and in section 507(c), and subject to the prior rights of a holder of a security interest in such goods or the proceeds thereof, the rights and powers of the trustee under section[] 544(a) . . . are subject to the right of a seller of goods that has sold goods to the debtor, in the ordinary course of such seller's business, to reclaim such goods if the debtor has received such goods while insolvent, within 45 days before the date of the commencement of a case under this title, but such seller may not reclaim such goods unless such seller demands in writing reclamation of such goods --
>
> > (A) not later than 45 days after the date of receipt of such goods by the debtor; or
> >
> > (B) not later than 20 days after the date of commencement of the case, if the 45-day period expires after the commencement of the case.

11 U.S.C. § 546(c). This text provides the sole statutory guidance to a reclaiming vendor and requires only that the vendor make a written demand within the statutory period. Notwithstanding Paramount's compliance with the statute, the Bankruptcy Court disallowed Paramount's reclamation claim on the basis that Paramount should have done more, including specifically moving for relief from the automatic stay, to avoid losing its reclamation right.

This result is at variance with the language of the statute and a number of pre-BAPCPA cases, including the only Circuit Court to consider the specific issue of whether a reclaiming vendor must seek additional relief from the court in order to protect its right of reclamation.[5]

---

[5]   The Bankruptcy Court cites <u>In re Adventist Living Ctrs</u>., 52 F.3d 159, 165 (7th Cir. 1995), in support of its holding that reclaiming vendors must do more than submit a written demand. ROA: 2029. But *Adventist Living* does not stand for the proposition that a reclaiming vendor needs to move for relief from stay or commence an adversary proceeding to enforce its right of reclamation. Instead, in that case, the court found that the reclaiming vendor failed to

*(Continued on next page)*

In re Griffin Retreading Co., 795 F.2d 676, 679-80 (8th Cir. 1986); *see also* In re Georgetown Steel Co., 318 B.R. 340, 348 (Bankr. D.S.C. 2004);   In re Hartz Foods, Inc., 264 B.R. 33, 36 (Bankr. D. Minn. 2001); In re Flagstaff Foodservice Corp., 32 B.R. 820, 823 (Bankr. S.D.N.Y. 1983).  These courts concluded that a reclaiming vendor does not lose its right of reclamation by failing to pursue its claim beyond making a valid reclamation demand.  Or, as the *Georgetown Steel* court noted, "Reclamation Creditors should not be prejudiced by any argument that their rights are somehow diminished because they cooperated with a sale of Debtor's assets which included their goods."  318 B.R. at 348.

 Not only do these cases follow the clear language of the statute, they also are much more sensible and practical.  As the Eighth Circuit Court of Appeals held in *Griffin Retreading*, "[t]o require the reclaiming creditor to follow its demand with an adversarial proceeding would only foster a race to the courthouse."  795 F.2d at 679-80; *see also Flagstaff Foodservice*, 32 B.R. at 823 ("The filing of an adversary proceeding is not mandatory" and "it would neither be economical nor expeditious to require all of the numerous reclamation creditors to commence adversary proceedings").  Further, the Eighth Circuit held that it was the debtor's burden to resolve the issue of reclamation if it desired to use the goods subject to a demand by specifically requesting such use from the court.  *Griffin Retreading*, 795 F.2d at 679-80; *accord Hartz Foods*, 264 B.R. at 36 (holding it is the "debtor-buyer's obligation, once it had received notice of the seller's intent to reclaim, to hold the goods for re-delivery to the seller or seek court approval to use the goods otherwise") (internal quotations omitted).

---

carry its "burden of proving that the debtor possessed the goods when it received the reclamation demand." *Id.* at 163. *Adventist Living* never mentions the automatic stay and the only inaction it condemns is the reclaiming vendor's failure to gather proof to support its claim. Although the Bankruptcy Court does cite other cases that do require additional steps beyond a demand, none of those cases is circuit level authority or controlling in this district. ROA: 2026, 2028-29. Further, Paramount submits that, for all of the reasons discussed herein, those cases were wrongly-decided and, assuredly, no longer operative in light of BAPCPA's passage in 2005.

Reclamation is a state law right, made applicable to bankruptcy cases through Section 546(c), and, as the Bankruptcy Court acknowledged, its application in the bankruptcy context is unique because Section 362 prohibits a vendor from taking any action to pursue reclamation of its goods once a bankruptcy case is commenced.  *See* 11 U.S.C. § 362(a); *see also* ROA: 2026. Therefore, even if it made sense outside of bankruptcy to require a reclaiming vendor to take additional steps toward retrieving its goods, any such action is specifically prohibited by the automatic stay in bankruptcy.  One would think that this fact would militate ***against*** encouraging reclaiming vendors to litigate their reclamation demands, particularly early in a case when so much needs to be done by the parties and the court to try to salvage the business.[6]  Yet these circumstances led the Bankruptcy Court to hold that all vendors that furnish valid reclamation demands on a debtor in bankruptcy must, at a minimum, also move for and obtain relief from the automatic stay.  *Id.*  This conclusion finds no basis in the statute, as discussed above, and is also not consistent with long-standing bankruptcy policy.

As the cases cited above recognize, it would impede the resolution of bankruptcy cases if reclaiming vendors were not only encouraged, but required, to participate in a race to the courthouse, each filing a motion for relief from the automatic stay and/or pursuing an adversary proceeding against the debtor to recover its goods on a rush basis at the commencement of a bankruptcy case.  Presumably, it is precisely to avoid litigation with each individual reclaiming vendor that, in many cases, including in this case, the debtor in possession requests that the court

---

[6]    Indeed, one of the key functions of bankruptcy is to "give[] the debtor a breathing spell from its creditors [to] stop[] all collection efforts, all harassment, and all foreclosure actions [to] permit the debtor to attempt a repayment or reorganization plan, or simply to be relieved of the financial pressures that drove him into bankruptcy . . .  A race of diligence by creditors for the debtor's assets prevents that."  Williford v. Armstrong World Industries, Inc., 715 F.2d 124, 127 (4th Cir. 1983) (citing legislative history); Miller v. Sav. Bank of Balt., 22 B.R. 479, 481 (D. Md. 1982) ("The automatic stay is intended to . . . prevent creditors from engaging in a 'race of diligence' which could enable a creditor to obtain more than its equitable share of the debtor's estate.").

establish procedures for handling reclamation demands through less disruptive means.

As the Eighth Circuit found in *Griffin Retreading*, it is much more practical to place the burden on the debtor in possession to hold the goods subject to the reclamation demands until the debtor seeks specific court authority to otherwise use or dispose of them.  In most cases, the debtor in possession is the only party with access to the information necessary to determine whether and to what extent reclamation demands are valid.  And given the debtor in possession's status as a fiduciary and quasi-trustee, In re J.T.R. Corp., 958 F.2d 602, 604-05 (4th Cir. 1992), placing this burden on it is appropriate.  For example, in this case, at the time Paramount served its Reclamation Demand and while it waited for a response under the Reclamation Procedures Order, only the Debtor knew which of the Reclamation Goods were in its possession and the details of the debt secured by a blanket lien on the inventory.  These facts were essential to a determination of what, if anything, could be done with respect to Paramount's Reclamation Demand.  Again, if each reclaiming vendor were required to take steps to obtain this information so that it could know if and when to further pursue its reclamation demand, the debtor would be unduly burdened, which could detrimentally affect the administration of the bankruptcy case.  Paramount should not now be punished for its compliance with and respect for the automatic stay and, as discussed further below, the Reclamation Procedures Order.

Finally, given the clear language of the statute and supporting case law establishing that making a demand in compliance with Section 546(c) is the only step required of a reclaiming vendor, it is difficult to understand how the Bankruptcy Court concluded that failure to take further steps could result in the loss of such a valuable right.  Where a reclaiming vendor has served a timely and valid reclamation demand and only "failed" to take additional affirmative steps that are not statutorily-required (and on which the legal authority is completely lacking in the governing jurisdiction), it ought not be deemed to have forfeited its reclamation rights.

As there has never been any question that Paramount complied with the statute and served a timely and valid reclamation demand, it is entitled to the benefits of the statute such that the denial of its reclamation right for not doing more was erroneous.

13

**B.** **Paramount's Compliance with the Bankruptcy Court's Reclamation Procedures Order Further Supports Its Right to Relief.**

In addition to complying with Section 546(c), Paramount complied with the procedures established for resolving reclamation demands early in the case by the Bankruptcy Court. Again, there is absolutely no dispute that this assertion is true. ROA: 2017-18. As described above, upon the Debtor's motion, the Bankruptcy Court issued its Reclamation Procedures Order on the third day after this case was filed and Paramount fully complied with that order. Indeed, Paramount did so before the order formally issued.

The only requirement placed on reclaiming vendors under the Reclamation Procedures Order, consistent with Section 546(c),[7] was to submit a reclamation demand in accordance with the terms of the order. Because those procedures also set forth the Debtor's timetable for resolution and even payment of the reclamation demands, Paramount (and, ostensibly, all the other claimants whose reclamation claims were also denied by the Bankruptcy Court) reasonably understood that compliance (*i.e.*, serving a timely reclamation demand according to the terms set forth in the Reclamation Procedures Order) was sufficient to entitle it to payment on account of the Reclamation Claim.

Under the Reclamation Procedures Order, Paramount's Reclamation Demand was conveniently not deemed rejected by the Debtor until two days after it completed its GOB sales and had sold all of its inventory. More than a year after the Reclamation Demand was made, the Debtor brought the Summary Judgment Motion, contending that Paramount's compliance with the statute and the Reclamation Procedures Order was insufficient to entitle Paramount to any relief. The Bankruptcy Court agreed. In so holding, the Bankruptcy Court effectively rendered its own Reclamation Procedures Order meaningless. Whether by accident or by design, Paramount was trapped. It is precisely because Paramount complied with the Bankruptcy

---

[7] The Reclamation Procedures Order and Section 546(c) both required only that the reclamation claimant submit a reclamation demand. Neither contains any suggestion, let alone a requirement, that the reclamation claimant move for relief from automatic stay.

Court's order that, by the time the Reclamation Demand was rejected, the goods were sold and it was too late for Paramount to take any further action.

Courts have been properly wary of penalizing parties for doing precisely what a court order commanded, holding that where the court has approved specific procedures requested by the debtors, no more can later be required of a claimant who has met both the statutory and case-specific procedures. *See Georgetown Steel*, 318 B.R. at 349 (finding that the debtor could not require reclaiming vendors to do more than that which was required under the plain terms of the reclamation procedures order and that where through its procedures the debtor had set the timetable for determination of the reclamation issues, the debtor could not then use the late posture of the case and the fact that the goods are no longer in its possession against the reclaiming vendors); In re Semcrude, L.P., 416 B.R. 399, 404 (Bankr. D. Del. 2009) (finding that Section 503(b)(9) claimants who had complied with the court's procedures had made a *prima facie* showing of the validity and amount of their claims and that because "one of the main purposes of the Procedures Order was to avoid a flood of motions in the Court," it would be inconsistent to require any sort of motion practice after creditors complied with the procedures). Courts have likewise been willing to penalize non-compliance with prescribed procedures for asserting claims.  In re DFI Proceeds, Inc., 2009 Bankr. LEXIS 4296, *4-7 (Bankr. N.D. Ind. Dec. 21, 2009).  It cannot be that a claimant loses either way.

The Bankruptcy Court tried to distinguish *Georgetown Steel* on the basis that the Reclamation Procedures Order in this case stated that it did not "prohibit, hinder or delay any Reclamation Claimant from asserting or prosecuting any of its rights to seek to reclaim goods." ROA: 2028.  Therefore, according to the Bankruptcy Court, it should have been clear to the reclaiming vendors that a failure to move for relief from stay would lead to a finding that they had not asserted their reclamation rights.  *Id.*.  However, it was anything but clear.  Instead, it was perfectly reasonable to infer from the Reclamation Procedures Order that no action needed to be taken beyond compliance with the order.  Nowhere in the Reclamation Procedures Order was it suggested that reclaiming vendors should or were obligated to take any further steps and

certainly not that they must move for relief from stay in particular, especially given the language of Section 546(c).  ROA: 372-79.  According to the Bankruptcy Court, Paramount failed to recognize that because the Reclamation Procedures Order did not prohibit moving for relief from stay and otherwise suing to reclaim, Paramount was required to take such actions on pain of losing its reclamation rights.  ROA: 2028.  That puts the onus, however, on the wrong party, as most courts have held that the burden should be on the debtor and the bankruptcy court to be clear about what requirements exist.  *See Georgetown Steel*, 318 B.R. at 349 (placing particular emphasis on the fact that the debtor "did not suggest the Reclamation Creditors needed to further protect their interests beyond the plain terms of the Reclamation Order" and holding that, therefore, no further steps were required).

In support of its conclusion that Paramount lost its rights through "inaction," the Bankruptcy Court portrays Paramount as having done nothing to protect its rights.  ROA: 2028-31.  This characterization is not accurate.  Paramount took repeated steps in pursuit of its Reclamation Demand.  Paramount filed a timely Reclamation Demand and followed it with a timely proof of claim in which it asserted a right to priority treatment for the portion of the claim arising from the right of reclamation.  ROA: 334-37; 392-99.  That proof of claim is *prima facie* valid.  Fed. R. Bankr. P. 3001(f); <u>Stancill v. Harford Sands Inc. (In re Harford Sands Inc.)</u>, 372 F.3d 637, 640 (4th Cir. 2004); <u>In re DeAngelis Tangibles, Inc.</u>, 238 B.R. 96, 98 (Bankr. M.D. Pa. 1999) ("At least one court has assumed, for argument purposes, that the presumption of validity includes a presumption of priority when the claim is marked priority . . . This approach seems reasonable and logical.").  In addition, when the Debtor objected to the priority assertion, notably with a lack of any legal or factual support for the objection, Paramount responded promptly and was prepared to litigate the matter.  ROA: 499-527.  Upon realizing that the Debtor intended to delay resolution of the Reclamation Claim, Paramount propounded formal discovery.  ROA: 894-900; 902-07.  Finally, Paramount responded to the Debtor's Summary Judgment Motion and appeared in the Bankruptcy Court in defense of its Reclamation Claim.  ROA: 1200-45; 1870.  Despite Paramount's clear willingness to take whatever action was necessary in the assertion and

defense of its Reclamation Claim, the Bankruptcy Court held that its rights were lost because it did not take certain steps that it was never told it must take and that the statute does not require.

The trap laid for Paramount and the resulting injustice are further exacerbated by the Bankruptcy Court's holding that a reclamation demand must be "denied" for a reclaiming vendor to be entitled to any relief and that Paramount's Reclamation Demand was never "denied." ROA: 2028.  First, the proposition that under the post-BAPCPA Section 546(c), a court must "deny" a reclamation demand to be allowed to grant an alternative remedy, is not supported by the plain language of the statute.  The Bankruptcy Court relied on statutory language Congress deleted in 2005 to reach this holding (despite its contention elsewhere in the Opinion, *see e.g.*, ROA: 2027 n.19, that the prior version of the statute should not be relied upon).  Although revised Section 546(c) no longer specifies the alternative remedies resulting from the court's denial of the demand, that may well be because the statute no longer refers to the court's ability to deny a reclamation demand at all.  It is possible then that the revised statute provides for an absolute right to reclamation that cannot be denied by the court.  Paramount, however, believes that it is more likely that the statute left it within the court's discretion to determine procedurally how to administer reclamation claims consistent with Section 546(c), which is precisely what the Bankruptcy Court did by entering the Reclamation Procedures Order.

Even more convoluted is the determination that Paramount's Reclamation Demand was never "denied," rendering the Bankruptcy Court's own Reclamation Procedures Order completely useless.  The order provided that the Debtor would advise each reclaiming vendor of the allowed amount of the reclamation demand no later than 120 days after the Petition Date (*i.e.* March 10, 2009), and that if no such response were received, the Debtor would be deemed to have "rejected" the reclamation demand.  ROA: 344; 376.  These procedures were authorized in the form of interim and final orders by the Bankruptcy Court.  *Id.*.  On March 10, 2009, Paramount had not received any response from the Debtor setting forth an allowed amount of the Reclamation Demand and, therefore, on that day, the Reclamation Demand was deemed rejected.

The Debtor argued before the Bankruptcy Court that the Reclamation Demand was

17

*rejected* rather than ***denied*** and it was rejected by the ***Debtor*** rather than by the ***Bankruptcy Court***.  ROA: 946-47.  It is unclear whether the Bankruptcy Court accepted only one or both of these overly-technical distinctions.  Paramount submits that both are disingenuous.  Splitting hairs between the rejection provided for in the Reclamation Procedures Order and the denial (that no longer even appears in the statute) is meaningless.  In either case, the effect is the same – the Debtor refused to return the goods subject to the demand or to account for their proceeds.  Further, although the Reclamation Procedures Order specifies that the Reclamation Demand was deemed rejected by the Debtor, this rejection was authorized by the Bankruptcy Court.  Through the order, the Bankruptcy Court granted the Debtor court authority to pay or reject the Reclamation Demand and the Debtor's use of that authority is sufficient to constitute a denial by the Bankruptcy Court.  The contrary result reached by the Bankruptcy Court is illogical and inequitable.

> **C.    The Bankruptcy Court's Additional Findings Rendering Paramount's Right of Reclamation Valueless Were Equally Erroneous.**
>
> > *1.    Prior Liens Do Not Automatically Extinguish Reclamation Rights.*

Section 546(c) makes clear that a right to reclaim goods is "subject to the prior rights of a holder of a security interest in such goods or the proceeds thereof."  11 U.S.C. § 546(c).  Paramount does not dispute that its right of reclamation was ***subject to*** the rights of the Debtor's pre-petition lender holding a blanket lien on all of the Debtor's inventory, including the Reclamation Goods.  However, the Bankruptcy Court interpreted "subject to" to mean "extinguished by," and that is neither consistent with the statute nor good sense.

In fairness to the Court below, it is not alone in this bizarre interpretation.  One other bankruptcy court sanctioned a similar misinterpretation.  In *Dana*, 367 B.R. at 421, the Bankruptcy Court for the Southern District of New York advanced a similar position under the rubric of the "prior lien defense."  Under the prior lien defense, "if the value of any given reclaiming supplier's goods does not exceed the amount of debt secured by the prior lien, that reclamation claim is valueless."  *Dana*, 367 B.R. at 419.  In simple English, this means that if a debtor has inventory on the petition date of $1 billion equally divided among 1,000 vendors (*i.e.*, $1 million each) and owes

18

its bank $1.5 million on the petition date, and that $1.5 million bank debt is secured by the $1 billion in inventory, then because $1.5 million is more than the $1 million owed each reclaiming vendor – and notwithstanding that there is a billion dollars of goods securing the bank claim – all of the 1,000 vendors' reclamation claims are rendered worthless.  That result is neither sensible nor supported by law, but it was endorsed by the Bankruptcy Court below.  ROA: 2030.

The prior lien defense as articulated by *Dana* and extended by the Bankruptcy Court in this case is also inconsistent with the majority of cases under pre-BAPCPA Section 546(c).[8] Those cases merely subordinate a reclaiming vendor's rights to prior liens, which is consistent with the statute's language.  *See, e.g.,* Pester Refining Co. v. Ethyl Corp. (In re Pester Refining Co.), 964 F.2d 842, 845-46 (8th Cir. 1992) ("[The debtor] argues that the mere presence of secured creditors with superior rights under [UCC § 2-702] extinguished [the] right of reclamation . . . This contention does obvious violence to the statutory language . . . [W]hen the right to reclaim is 'subject to' the right of secured creditors, that means the right is subordinate or inferior to the security interests, not that it is automatically and totally extinguished."); *Georgetown Steel*, 318 B.R. at 346-52 (holding that the reclamation claims satisfied the statutory requirement that they be "subject to" the prior secured right by holding a place second in priority, and need not be extinguished by those prior rights); Dairy Mart Convenience Stores, Inc., 302 B.R. 128, 134 (Bankr. S.D.N.Y. 2003) ("While, the right to reclamation is subordinate to that of a good faith purchaser, it is not automatically extinguished, but rather, it is relegated to some less commanding station."); *Hartz Foods*, 264 B.R. at 37 (Applicable law "has the effect, in priority terms, of placing the reclaiming seller behind the insolvent buyer's secured creditors who have security interests in the goods, ***but ahead of the buyer's general unsecured***

---

[8]   Pre-BAPCPA case law is still authoritative on the issue of what exactly "subject to" means under Section 546(c) because that phrase has always been a part of Section 546(c).  The BAPCPA amendments only clarified *whom* the reclamation claimants were subject to by specifically referencing the holder of a prior security interest in the goods.

*creditors*.") (emphasis in original); <u>In re ARLCO, Inc.</u>, 239 B.R. 261, 267 (Bankr. S.D.N.Y. 1999) ("That the right of a reclaiming creditor is subordinate to that of a good faith purchaser does not automatically extinguish the reclamation right . . . Rather, the reclaiming creditor is relegated to some less commanding station.").

Post-BAPCPA, courts have continued this practice. <u>In re Pilgrim's Pride Corp.</u>, 2009 Bankr. LEXIS 3635, *7 (Bankr. N.D. Tex. November 12, 2009) ("[R]eclamation claims, to the extent that the goods that are the subject of such claims are covered by the liens of Debtor's prepetition secured lenders, are hereby declared to be ***subordinate to***, although, to the extent of the surplus value, ***not extinguished by***, the rights of the prepetition secured lenders.") (emphasis added).  Notably, even cases purportedly following *Dana* have done so under a narrower set of circumstances and have not extended the prior lien defense to a scenario where the goods are not completely consumed to satisfy the secured lender.  *See* <u>In re Advanced Marketing Svs., Inc.</u>, 360 B.R. 421, 427 (Bankr. D. Del. 2007) (holding that reclaiming vendors failed to show the likelihood of establishing a valid reclamation right under facts only because the senior lender had not yet been paid in full and was still being paid down through sale of goods.).  The Bankruptcy Court here is making new law in applying the prior lien to extinguish reclamation claims after the secured claim has been paid in full and a surplus remains.

Illuminating is the recent decision by the Sixth Circuit in *Phar-Mor*, which held that the existence of a prior secured lien on the goods subject to a vendor's reclamation demand does not defeat a valid right of reclamation.  534 F.3d at 507.  The facts of *Phar-Mor* are similar to this case: after filing for bankruptcy the debtor closed stores and conducted going-out-of-business sales, culminating in a liquidation, including the sale of the reclaiming vendor's goods and generating sufficient funds to pay off the secured lender.  *Id.* at 504-08.  The court held that even when the goods subject to reclamation are sold to satisfy a secured creditor's superior claim and, therefore, the goods subject to reclamation are gone, the vendor's right of reclamation is not extinguished.  *Id.* at 507 (granting an administrative expense claim under the prior version of the statute); *see also Georgetown Steel*, 318 B.R. at 352.

Further, although *Phar-Mor* was decided under the pre-BAPCPA Section 546(c), the Sixth Circuit's decision was rendered after BAPCPA and after the *Dana* decision.  The Sixth Circuit acknowledged *Dana*, but refused to follow it, finding its holding impractical and its reasoning not compelling.  *Phar-Mor*, 534 F.3d at 507; *accord* Deborah L. Thorne, *Last in Line: The Courts Begin to Speak: Deciphering 546(c)*, 26-3 Am. Bankr. Inst. J. 38, 38 (Apr. 2007) (noting that after *Dana*, "the remedy, which was intended to be a significant protection of sellers of goods from an insolvent buyer, in practice has become the most illusory of remedies"); Lisa Gretchko, *Seller Beware! Is your Reclamation Claim as Strong as you Think it Is?*, 22-2 Am. Bankr. Inst. J. 20, 50 (Mar. 2003) (noting that a court applying the prior lien defense is "insensitive to the reality that inventory is often liquidated first and the proceeds paid to the secured creditor, and ignores the protection" that the Uniform Commercial Code (the "UCC") and Bankruptcy Code afford reclaiming creditors).  Consistent with the majority case law and the scholarly commentary, Paramount submits that the prior lien defense articulated in *Dana* and extended by the Bankruptcy Court in this case is a distortion of the statutory language.  "Subject to" means subordinate, not extinguished and cases rejecting this common usage are not good law.

Further, the Bankruptcy Court erred when it found that (1) the refinancing of the pre-petition debt and entry into the DIP Facility and (2) the sale of the Reclamation Goods during the GOB sales independently rendered the Reclamation Claim valueless.

As an initial matter, under the plain language of Section 546(c), Paramount's right of reclamation is subject only to the "***prior*** rights" of a holder of a security interest in the Reclamation Goods.  *See* 11 U.S.C. § 546(c)(1) (emphasis added).  The rights of the DIP Facility lenders do not qualify as "prior rights" under the statute.  Because the DIP Facility lenders' rights did not arise before the rights of Paramount or any other reclaiming vendor, the Bankruptcy Court contorted the statute to analogize the new lenders to a buyer in ordinary course.  ROA: 2030-31.  But, of course, that is not what Section 546(c) says.  Building upon this foundation, the Bankruptcy Court held that Paramount received notice of the Debtor's intent to "use" the Reclamation Goods as collateral for the DIP Facility and that, because Paramount did not object to the incurrence of the debt, its

Reclamation Claim was rendered valueless by these events.  *Id.*

At least one court has specifically rejected the argument that the refinancing of pre-petition debt and incurrence of post-petition debt secured by the same collateral affects the validity of a reclamation demand.  In the bankruptcy court decision in the *Phar-Mor* case, the pre-petition lenders were paid in full with funds from the post-petition debt.  In re Phar-Mor, Inc., 301 B.R. 482, 497 (Bankr. N.D. Ohio 2003), *aff'd* 534 F.3d 502 (6th Cir. 2008).  Even though the post-petition debt was secured by super-priority liens in the same collateral, the pre-petition lenders' liens were released.  *Id.* The court held that "[a] debtor's decision to grant a security interest in inventory to a subsequent secured lender cannot defeat a seller's reclamation rights if the seller asserted its rights before the security interest is granted . . . Therefore, having notice of the Reclamation Demands, DIP Lenders cannot qualify as good faith purchasers."  *Id.*  Although the Bankruptcy Court found that "[t]here really is no dispute over the fact that an Article 9 secured creditor falls within the definition of 'purchaser,'" *see* ROA: 2030 n.22, it did not address whether the DIP Facility lenders would constitute "good faith purchasers" under the UCC.  Paramount submits that, as its Reclamation Demand was served on the Debtor on the day before the refinancing took place in this case, there was knowledge generally that reclamation claims existed, and there is no question that Paramount acted as expeditiously as possible, the Bankruptcy Court had no basis for assuming on summary judgment that the DIP Facility lenders would qualify as good faith purchasers; therefore, the Reclamation Claim was not properly made subject to their liens.[9]

---

[9]   The refinancing of the pre-petition debt and incurrence of the DIP Facility occurred on November 12, 2008.  In the discovery responses, the Debtor stated that on November 9, 2008, it held $14,571,763.62 of Paramount goods in its possession.  ROA: 1156-98.  At the time of summary judgment, Paramount had still not received answers to its discovery, including in particular interrogatory number 8, in which it requested information regarding the proceeds the Debtor received from the sale of Paramount goods in the form of a daily tally starting at the Petition Date, the answer to which would have made clear the amount of goods still in the Debtor's possession on November 12, 2008.  ROA: 1152-53.  The declaration submitted to the Bankruptcy Court in compliance with Federal Rule of Civil Procedure 56(f) also made clear that Paramount would seek further discovery, including

*(Continued on next page)*

Even if Paramount's Reclamation Claim is subject to the liens securing the DIP Facility, and for the reasons set forth above, Paramount maintained a right of reclamation to any goods that were not actually sold in order to satisfy the DIP Facility.  Again, unless the *Dana* prior lien defense wipes out the rights of reclaiming vendors, the incurrence of debt with priority over the Reclamation Claim would not immediately extinguish Paramount's rights.  At a minimum, further discovery was necessary (and sought) to determine what the value of Paramount's Reclamation Claim was at the time that DIP lenders were paid off.  ROA: 1250-51.

The sale of all of the Reclamation Goods during the Debtor's GOB sales also did not extinguish Paramount's Reclamation Claim.  First, as discussed above, even to the extent that the proceeds of the sales were used to satisfy the DIP Facility, the Bankruptcy Court did not properly evaluate whether Paramount's right was subject to those of the DIP Facility lenders.  In addition, the Debtor's act of selling the goods at the GOB sales could not have affected Paramount's rights.  *See Phar-Mor*, 301 B.R. at 497 (rejecting debtors' argument that the sale of the goods during going-out-of-business sales, where the proceeds were used to pay off the post-petition lender, terminated the reclamation rights in those goods and responding that "[n]o action on the part of a debtor should be permitted to defeat a seller's right to reclamation.") (citing, *inter alia*, *Griffin Retreading*, 795 F.2d at 679).  On the contrary, the act of selling goods subject to a valid reclamation claim may well subject a debtor to liability for conversion.  In re Western Farmers Ass'n., 6 B.R. 432, 435 (Bankr. D. Wash. 1980).  However, what is beyond dispute is that Paramount should not be punished for the Debtor's wrongful conduct in soliciting reclamation demands, ignoring them, then selling the goods and not tracking the proceeds.

---

communications between the Debtor and the DIP Facility lenders.  ROA 1252-53.  The Bankruptcy Court ought to have deferred determining the motion until full discovery in order to determine whether the DIP lenders not only gave value but also were without knowledge of Paramount's reclamation claim.

> 2.      *The Right of Reclamation Extends to Proceeds and Relevant Discovery Must be Allowed.*

The more well-reasoned cases extend the right of reclamation to proceeds of the goods. *See, e.g., Pester Refining*, 964 F.2d at 846 ("[A]fter the secured creditors' superior interests have been satisfied or released, the reclaiming seller retains a priority interest in any remaining goods, and in any surplus proceeds from the secured creditors' foreclosure sale."); *see also* <u>United States v. Westside Bank</u>, 732 F.2d 1258, 1263 (5th Cir. 1984) (holding that under the UCC, the reclamation right extends to proceeds because "to hold otherwise would in many instances render the statutory remedy a nullity"); *Georgetown Steel*, 318 B.R. at 348-49; *Arlco*,, 239 B.R. at 272 ("[W]hen the reclaiming seller's goods or traceable proceeds from those goods are in excess of the value of the superior claimant's claim . . . the reclaiming seller will be allowed either to reclaim the goods or receive an administrative claim or lien in an amount equal to the goods that remain after the superior claim has been paid."); <u>In re Victory Mkts.</u>, 212 B.R. 738, 743 (Bankr. N.D.N.Y. 1997) ("[T]he reclaiming seller retains a priority interest in any goods remaining and in any surplus proceeds remaining after the superior secured creditor's interests have been satisfied or released."); <u>In re Child World</u>, 145 B.R. 5, 8 (Bankr. S.D.N.Y. 1992) ("[A]fter the secured creditors' superior interests have been satisfied or released, the reclaiming seller retains a priority interest in any remaining goods, and in any surplus proceeds from the secured creditors' foreclosure sale."). Further, contrary to the Bankruptcy Court's holding, the leading treatise on the UCC also states that the reclamation remedy extends to proceeds. *See* 4 White & Summers, Uniform Commercial Code, § 32-11 (6th ed. 2005) ("[A] seller of goods in compliance with statutory requirements for reclamation of goods retains priority status to the traceable proceeds from the sale of goods seller seeks to reclaim, but takes subject to the rights of prior perfected secured lenders.").

The Debtor continued to sell all of the Reclamation Goods beyond the point at which the sales had generated sufficient proceeds to satisfy the DIP Facility lenders.  The limited discovery responses provided by the Debtor show that the Debtor did not keep adequate records to account for what Reclamation Goods remained in its possession at the time that all prior liens had been exhausted.  ROA: 1152-53.  The Debtor's disregard for the Reclamation Demand and continued sale

of the Reclamation Goods at the GOB sales should not be allowed to defeat Paramount's right of reclamation.[10]   As reclamation is intended to protect the vendor from the insolvent buyer's deemed fraud, see discussion in Part VI.C.3, the right should not disappear as a result of the buyer's continued bad behavior.   Under the Bankruptcy Court's holding, debtors would be incentivized to ignore reclamation demands and continue to sell the goods subject to those demands even where no prior lien exists or when the prior lien has been satisfied.   This interpretation is not consistent with historical practice and is clearly not the purpose of revised Section 546(c).

Paramount's interrupted and uncompleted discovery would provide the answers to what value should be given to Paramount's Reclamation Claim.   For that reason, the Bankruptcy Court erred in granting summary judgment on the issue with discovery outstanding.   Courts have held that "[a]s a general rule. . . summary judgment is not appropriate prior to the completion of discovery."   Webster v. Rumsfeld, 156 Fed. Appx. 571, 576 (4th Cir. 2005) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986)).   In particular, summary judgment may not be appropriate where "the nonmoving party has not had the opportunity to discover information that is essential to his opposition."   Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986).   In such a case, a respondent should not be "'railroaded' by a premature motion for summary judgment."   *Celotex Corp.*, 477 U.S. at 326.   As another district court in this Circuit recently held:

> Rule 56(f) provides this Court with the discretionary authority, in appropriate cases, to deny a premature motion for summary judgment where the nonmoving party demonstrates that he has not had adequate time for discovery or needs additional time to complete it.

Minter v. Wells Fargo Bank, 593 F. Supp. 2d 788, 792 (D. Md. 2009).

In connection with its opposition to the Summary Judgment Motion, Paramount supplied

---

[10]   Indeed, in *Georgetown Steel*, the court held that where all of the Debtors' assets were sold, the reclamation vendors' interest should extend to the proceeds and that they should not be prejudiced by the inability to trace because, rather than interfere by attempting to trace and segregate its proceeds throughout the sale process, they cooperated with the debtors' sale, which included their goods. *Georgetown Steel*, 318 B.R. at 348.

the Bankruptcy Court with an affidavit describing what discovery was outstanding and why it was needed.  ROA: 1247-53.  As noted therein, that discovery may reveal a number of facts central to this dispute and in support of Paramount's position.  For example, discovery would establish which Reclamation Goods the Debtor still held at the time of the refinancing of the pre-petition debt and at the time the Debtor had raised funds sufficient to satisfy the DIP Facility.  *Id.* at 1250-53. Therefore, granting summary judgment with this discovery outstanding did not allow Paramount to properly defend its right of reclamation.

3.      *The 2005 BAPCPA Amendments were Intended to Enhance the Rights of Reclaiming Vendors and Should Not be Read to Strip Reclaiming Vendors of Their Rights.*

The BAPCPA amendments to the Bankruptcy Code, and to Section 546(c) in particular, did not take away a court's authority and discretion to grant a reclaiming vendor a remedy other than retaking possession of its goods, including the ability to grant an administrative claim. Paramount agrees with the Bankruptcy Court that following the BAPCPA amendments, Section 546 no longer provides that the court *must* grant a reclaiming vendor an administrative claim or junior lien if it prevents the claimant from reclaiming goods.    ROA; 2027; *see also* 11 U.S.C. § 546(c).  From this revision, the Bankruptcy Court determined that Congress must have intended to limit a reclaiming vendor's rights to either repossession of its goods or a remedy under another provision of the Bankruptcy Code, Section 503(b)(9).[11]  ROA: 2027.

However, the fact that Congress granted vendors a remedy in Section 503(b)(9) for goods delivered within 20 days of bankruptcy in no way implies that it curtailed vendors' rights to reclaim under an entirely separate section.  The two sections – although providing some overlap – create separate remedies such that there are two separate rights.  Although a vendor assuredly

---

[11]  Section 503(b)(9), enacted as part of BAPCPA, grants an administrative expense priority claim for the value of goods received by the debtor within the 20-day period preceding the bankruptcy filing.  *See* 11 U.S.C. § 503(b)(9).  Section 546(c), as noted, provides for reclamation going back 45 days preceding the bankruptcy filing.

cannot be paid under Section 503(b)(9) for goods it reclaimed under Section 546(c), there is no need to curtail a broad remedy because a vendor also has a narrow one.

The Bankruptcy Court's construction is additionally inconsistent with the principle that "[w]hen Congress amends the bankruptcy laws, it does not write 'on a clean slate.'" Dewsnup v. Timm, 502 U.S. 410, 419 (1992). Changes in prior practice are not presumed based on vague language absent "at least some discussion in the legislative history." *Id. See also* Keene Corp. v. United States, 508 U.S. 200, 209 (1993) ("[W]e do not presume that the revision worked a change in the underlying substantive law 'unless an intent to make such [a] change is clearly expressed.'"). Abolition of the right to a remedy for reclamation other than the retaking of goods is inconsistent with long-standing precedent and an unreasonable reading of the statute.

The Bankruptcy Court's misunderstanding of Section 546(c) as lessening a vendor's rights is highlighted by the fact that, in the 2005 BAPCPA amendments, Congress enhanced the protections afforded to reclaiming vendors by expanding the look-back period before bankruptcy during which goods may be subject to reclamation from 10 days to 45 days and enlarging the grace period, which gives the vendor additional time after a bankruptcy filing to file its notice of reclamation, from 10 days to 20 days. These changes reflect obvious congressional intent to improve the rights of reclaiming vendors. It would be wholly inconsistent with these changes to limit the court's ability to grant relief to reclaiming vendors as the Bankruptcy Court suggests.

The deletion of the requirement that the court grant replacement remedies under Section 546(c) cannot be read to strip the court of its authority and discretion to award an appropriate remedy to a reclaiming vendor when the court allows the debtor to retain the goods despite a vendor's demand that the debtor return them. In fact, if the deletion of the prior Section 546(c)(2) (as the only section referencing the alternative remedies) could be read to do this, then, as discussed above, under the same logic, it must be read to do much more. Because prior Section 546(c)(2) was also the only section referencing the court's authority to ***deny*** the reclamation demand and allow the debtor to keep and use the goods, by the Bankruptcy Court's reading of the statute, the courts have also lost the power to deny reclamation, making it an

27

absolute right.[12]

Further, reclamation is an equitable right.  The official comment to the UCC as adopted in Virginia states that the seller's right to reclaim from an insolvent buyer "takes as its base line the proposition that any receipt of goods on credit by an insolvent buyer amounts to a tacit business misrepresentation of solvency and therefore is fraudulent as against the particular seller."  *See* Va. Code Ann. § 8.2-702 (2009).  There must be a remedy for the victim of this deemed fraud, particularly in this case where the Debtor obtained goods in this (deemed) fraudulent manner and then sold the goods after a valid reclamation demand was made.  Presumably, Congress would not intend to facilitate this type of behavior by relegating reclaiming vendors to the status of general unsecured creditors and enriching the estate at the expense of the defrauded party.  Or, as the Sixth Circuit held in rejecting precisely the interpretation advanced by the Bankruptcy Court, general unsecured creditors should not "benefit at the expense of one whose assets come into a bankrupt's possession under conditions which warrant rescission."  *Phar-Mor*, 534 F.3d at 506-07; *accord* Manly v. Ohio Shoe Co., 25 F.2d 384, 385 (4th Cir. 1928) ("Such [general] creditors have no right to profit by the fraud of the bankrupt to the wrong and injury of the party who has been deceived and defrauded.")

Given this background and the fact that the BAPCPA amendments to the Bankruptcy Code generally improved vendors' rights, the Bankruptcy Court's conclusion that, by those same amendments, reclaiming vendors were left with no remedy if they did not sue to retake their

---

[12]  While this reading may be favorable to Paramount, it acknowledges that this is not the most reasonable interpretation.  Courts have repeatedly recognized the importance of allowing a debtor to keep and pay for goods subject to reclamation to facilitate reorganization.  *See, e.g., Pester Refining*, 964 F.2d at 845 ("[R]emedial discretion allows the court to leave the goods in the debtor's possession to facilitate a Chapter 11 reorganization."); *Griffin Retreading*, 795 F.2d at 679 (holding that the ability to grant an alternative remedy such as an administrative claim "provides flexibility to the bankrupt estate by permitting the use of the property, if needed for the successful completion of the plan of reorganization.  In such case the seller is protected without placing the plan in jeopardy.").  Nothing indicates that the right to retain, sell and pay for goods subject to reclamation was extinguished by BAPCPA.

goods does not make sense.  More consistent with this history and policy is an interpretation of Section 546(c) that recognizes both the rights of reclaiming vendors and prioritizes them behind prior liens and ahead of other creditors.  Significantly, the Debtor and Bankruptcy Court both seem to have acknowledged that payment in full of reclamation claims ahead of general unsecured claims remains an acceptable practice.  Upon the Debtor's request, the Bankruptcy Court entered the Reclamation Procedures Order, under which the Debtor would determine the "allowed amount, if any, of the Reclamation Demand" and, upon agreement with the reclaiming vendor as to the allowed amount, the Debtor was authorized not only to return the goods, but also to pay the allowed amount.  ROA: 376-77 (¶ 5(d)).  Nothing in the Reclamation Procedures Order prevented the Debtor from acknowledging that the full amount asserted in a reclamation demand was accurate and paying that amount in full immediately upon so deciding.  ROA: 372-78.  At that point in the case, neither the Debtor nor the Bankruptcy Court seemed to advance the position that the only payment a reclaiming vendor may receive is its pro rata share as a general unsecured creditor.  Instead, both apparently accepted that there is something about a reclamation claim that may warrant payment in full during the administration of the case.

Paramount submits that they were correct – a valid reclamation demand should be paid in full as long as that does not adversely affect the right of a prior lien claimant to be paid.  Any reading of the revisions to Section 546(c) that completely deprives the reclaiming vendor of a remedy just because there was a prior lien and/or because the debtor failed to keep track of the lien and the reclaiming vendor's inventory is a perversion of the statutory language and obvious purpose, which should not be condoned.

## VII.
## CONCLUSION

Paramount has taken all required steps to assert and preserve its right of reclamation. Paramount's compliance with the literal requirements of the statute and the Bankruptcy Court's Reclamation Procedures have never been in dispute.  Importantly, moving for relief from stay is not a requirement for assertion of a valid reclamation demand.  If compliance with the statute

and order constitutes a failure to assert the right of reclamation, then Paramount was misled into believing that it had satisfied all requirements and sufficiently asserted its right.

The existence of a prior secured interest in the Reclamation Goods did not automatically extinguish Paramount's right of reclamation.  At a minimum, Paramount maintained an interest in the Reclamation Goods still in the Debtor's possession at the time sufficient proceeds were raised through the GOB sales to satisfy the DIP Facility lenders.  Further discovery, which had been propounded by Paramount prior to summary judgment, would reveal the exact amount that Paramount should be compensated on account of its right of reclamation.  Finally, the BAPCPA amendments cannot be interpreted to have stripped courts of their authority to grant a remedy to reclaiming vendors, including an administrative claim, where the circumstances warrant such a result as they do here.

For all of these reasons, the Bankruptcy Court erred in reclassifying the Reclamation Claim as a general unsecured claim.  Therefore, the Order should be reversed and this matter remanded to the Bankruptcy Court with instructions that, consistent with *Phar-Mor*, *Pester Refining*, *Manly*, *Pilgrim's Pride*, *Georgetown Steel*, *Dairy Mart*, *Hartz Foods*, *Arlco*, *Victory Mkts.*, *Child World* and the express language of Section 546(c), the Bankruptcy Court order Paramount's claim paid in full to the extent that there were any surplus proceeds remaining after the satisfaction of prior claims secured by the Debtor's inventory.

DATED:  May 25, 2010                                Respectfully submitted,

KLEE, TUCHIN, BOGDANOFF & STERN LLP     KEPLEY BROSCIOUS & BIGGS, PLC

By: _____          By:____ */s/*____ *William A. Broscious*_____
    David M. Stern (Admitted *Pro Hac Vice*)          William A. Broscious
    Korin A. Elliott (Admitted *Pro Hac Vice*)          (VA State Bar No. 27436)
    1999 Avenue of the Stars, 39th Floor               2211 Pump Road
    Los Angeles, CA 90067                              Richmond, Virginia  23233
    Tel: (310) 407-4000                                Tel: (804) 741-0400 ext. 202
    Email: dstern@ktbslaw.com                          Email: wbroscious@kbbplc.com

## CERTIFICATE OF SERVICE

I, Korin A. Elliott, hereby certify that a true and correct copy of the foregoing *Appellant Paramount Home Entertainment Inc.'s Opening Brief* has been served upon the parties listed below via first class mail on this 25th day of May, 2010.

/s/        *Korin A. Elliott*

Korin A. Elliott (kelliott@ktbslaw.com)

| **Debtors' Counsel** | **Counsel for the Creditors' Committee** |
|---|---|
| SKADDEN, ARPS, SLATE, MEAGHER & FLOM, LLP<br>Attn:  Greg M. Galardi and Ian S. Fredericks<br>One Rodney Square<br>10th and King Streets, 7th Fl.<br>Wilmington, DE  19801<br><br>SKADDEN, ARPS, SLATE, MEAGHER & FLOM, LLP<br>Attn:  Chris L. Dickerson<br>155 N. Wacker Drive<br>Chicago, IL  60606<br><br>MCGUIRE WOODS LLP<br>Attn:  Douglas M. Foley and<br>Dion W. Hayes<br>901 E. Cary Street<br>Richmond, VA  23219 | PACHULSKI STANG ZIEHL & JONES, LLP<br>Attn:  Richard M. Pachulski, Jeffrey N. Pomerantz, and Stanley E. Goldich<br>10100 Santa Monica Blvd., 11th Fl.<br>Los Angeles, CA  90067<br><br>PACHULSKI STANG ZIEHL & JONES, LLP<br>Attn:  Robert J. Feinstein<br>780 Third Avenue, 36th Floor<br>New York, NY  10017<br><br>TAVENNER & BERAN, PLC<br>Attn:  Lynn L. Tavenner and<br>Paula S. Beran<br>280 N. Eighth Street, 2nd Fl.<br>Richmond, VA  23219 |
| **Office of the U.S. Trustee**<br>Attn:  Robert B. Van Arsdale<br>701 East Broad Street, Suite 4304<br>Richmond, VA  23219 | |