DAVID M. STERN (Admitted *Pro Hac Vice*)
KORIN A. ELLIOTT (Admitted *Pro Hac Vice*)
KLEE, TUCHIN, BOGDANOFF & STERN LLP
1999 Avenue of the Stars, 39th Floor
Los Angeles, California  90067
Telephone:     (310) 407-4000
Facsimile:     (310) 407-9090

         -and-

WILLIAM A. BROSCIOUS (VA State Bar No. 27436)
KEPLEY BROSCIOUS & BIGGS, PLC
2211 Pump Road
Richmond, Virginia  23233
Telephone:     (804) 741-0400, ext. 202

Attorneys for Appellant
PARAMOUNT HOME ENTERTAINMENT INC.

# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF VIRGINIA
### (Richmond Division)

| | |
|---|---|
| In re | USBC Case No.:  08-35653-KRH (Jointly Administered) |
| CIRCUIT CITY STORES, INC., *et al.*, | |
| Debtors. | |
| PARAMOUNT HOME ENTERTAINMENT INC. | Case No.  3:10-cv-00316-JRS |
| Appellant, | |
| v. | |
| CIRCUIT CITY STORES, INC., et al., | |
| Appellees. | |

## APPELLANT PARAMOUNT HOME ENTERTAINMENT INC.'S REPLY BRIEF

## TABLE OF CONTENTS

I.     INTRODUCTION ................................................................................................. 1

II.    APPELLEE PREMISES ITS ARGUMENT ON THE WRONG STANDARD OF REVIEW .................................................................................. 2

III.   APPELLEE MISINTERPRETS THE PLAIN LANGUAGE OF SECTION 546(c) .............................................................................................................. 3

IV.   APPELLEE IS ENTITLED TO NO REWARD BECAUSE IT FAILED TO FOLLOW THE LAW AND THE RECLAMATION PROCEDURES IT ESTABLISHED, NOR SHOULD THOSE FAILURES DISADVANTAGE PARAMOUNT .................................................................................................... 5

V.    DANA'S APPLICATION OF THE PRIOR LIEN DEFENSE IS NOT GOOD LAW .......................................................................................... 8

VI.   THE BANKRUPTCY COURT'S ASSUMPTION THAT THE DIP LENDERS WERE GOOD FAITH PURCHASERS UNDER THE UCC WAS UNWARRANTED ................................................................................. 11

VII.  RECLAMATION IS A STATE LAW RIGHT AND, THEREFORE, PARAMOUNT HAS A RIGHT TO PROCEEDS .................................................. 13

VIII. FURTHER DISCOVERY IS ESSENTIAL TO DETERMINE THE VALIDITY AND AMOUNT OF PARAMOUNT'S RECLAMATION CLAIM ................................................................................................ 14

IX.   CONCLUSION ................................................................................... 15

## TABLE OF AUTHORITIES

**Page(s)**

FEDERAL CASES

In re ARLCO, Inc.
    239 B.R. 261 (Bankr. S.D.N.Y. 1999)....................................................................................13

In re Center Wholesale, Inc.,
    788 F.2d 541 (9th Cir. 1986) ..............................................................................................10

In re Child World,
    145 B.R. 5 (Bankr. S.D.N.Y. 1992)......................................................................................13

Commodity Futures Trading Comm. v. Weintraub,
    471 U.S. 343 (1985)................................................................................................................5

In re Crosby Stores, Inc.,
    65 F.2d 360 (2d Cir. 1933).....................................................................................................7

In re Dana Corp.,
    367 B.R. 409 (Bankr. S.D.N.Y. 2007) ..................................................................................8

In re First Magnus Finance Corp.,
    2008 WL 5046596 (Bankr. D. Ariz. Oct. 16, 2008) ..............................................................4

In re Georgetown Steel Co.,
    318 B.R. 340 (Bankr. D.S.C. 2004).................................................................................4, 13

Gilliam v. Hovis (In re Marine Energy Sys. Corp.),
    2010 U.S. Dist. LEXIS 31510 (D.S.C. Mar. 31, 2010) .........................................................3

In re Griffin Retreading Co.,
    795 F.2d 676 (8th Cir. 1986) .................................................................................................4

Hamilton v. Lanning,
    2010 U.S. LEXIS 4568 (June 7, 2010) ..................................................................................9

Hovis v. Gilliam (In re Marine Energy Sys. Corp.),
    2009 Bankr. LEXIS 1273 (Bankr. D.S.C. Mar. 24, 2009) .....................................................3

Hunt v. Cromartie,
    526 U.S. 541 (1999)................................................................................................................3

Mercantile Peninsula Bank v. French (In re French),
    499 F.3d 345 (4th Cir. 2007) .................................................................................................3

Myers v. United States,
       297 B.R. 774 (S.D. Cal. 2003)...................................................................7

Pester Refining Co. v. Ethyl Corp. (In re Pester Refining Co.)
       964 F.2d 842 (8th Cir. 1992) ...............................................................13

Phar-Mor, Inc. v. McKesson Corp. (In re Phar-Mor, Inc.),
       534 F.3d 502 (6th Cir. 2008) ........................................................9, 10, 12

In re Quality Stores, Inc.,
       289 B.R. 324 (Bankr. W.D. Mich. 2003)...............................................10

In re Republic Fin. Corp.,
       128 B.R. 793 (Bankr. N.D. Okla. 1991) .................................................7

Spannaus v. U.S. Dep't of Justice,
       813 F.2d 1285 (4th Cir. 1987) ...............................................................3

In re Suwannee Swifty Stores, Inc.,
       2000 Bankr. LEXIS 2005 (Bankr. M.D. Ga. March 22, 2000) ...............10

United States v. Westside Bank
       732 F.2d 1258 (5th Cir. 1984) .............................................................13

Unsecured Creditors' Comm. v. First Nat'l Bank & Trust Co. of Escanaba
       (In re Ellingsen MacLean Oil Co.),
       834 F.2d 599 (6th Cir. 1987) ...............................................................11

In re Victory Mkts.,
       212 B.R. 738 (Bankr. N.D.N.Y. 1997) .................................................13

**STATE CASES**

Meinhard v. Salmon,
       164 N.E. 545 (N.Y. 1928)......................................................................7

Oberdorfer v. Meyer,
       13 S.E. 756 (Va. 1891).........................................................................12

Toyota Motor Credit Corp. v. C.L. Hyman Auto Wholesale, Inc.,
       506 S.E.2d 14 (Va. 1998)......................................................................12

**FEDERAL STATUTES**

11 U.S.C. § 364.............................................................................................11

11 U.S.C. § 364(e) ...................................................................................11, 12

11 U.S.C. § 546(c) ................................................................................. passim

11 U.S.C. § 546(c)(1) ............................................................................................3

11 U.S.C. § 1107(a) ...........................................................................................5, 7

**STATE STATUTES**

UCC § 2-702 ......................................................................................................14

Va. Code Ann. § 8.1A-103(a)(3) ......................................................................9, 14

Va. Code Ann. § 8.2-103 ......................................................................................12

**RULES**

FED. R. BANKR. P. 3003 ..........................................................................................5

FED. R. CIV. P. 56(f) ..............................................................................................2

**OTHER AUTHORITIES**

3 COLLIER ON BANKRUPTCY ¶ 364.06 (15th ed. rev. 2009) .................................11

4 White & Summers, UNIFORM COMMERCIAL CODE, § 32-11 (6th ed. 2005) .............13

# I.
## INTRODUCTION

Paramount Home Entertainment Inc. ("Paramount") hereby replies to the *Appellees' Brief in Opposition to the Opening Brief of Appellant Paramount Home Entertainment Inc.* [Docket No. 10] ("Appellee's Brief") filed by Circuit City Stores, Inc. and affiliated chapter 11 debtors (collectively, "Appellee").  In this Reply, Paramount will show:

1.       Appellee's Brief is premised on an erroneous standard of  review.  The law is clear that this Court should review the Bankruptcy Court's decision to grant summary judgment *de novo*.  *See* Part II.

2.       Appellee (and the Bankruptcy Court) fundamentally misinterpret Section 546(c)[1] to require Paramount, in order to retain a reclamation right created by state law and expressly preserved by the Bankruptcy Code, to take action beyond what is prescribed by the plain language of the statute.  *See* Part III.

3.       The process of obtaining and granting the Reclamation Procedures Order[2]  was not simply theater.   Neither Appellee nor the Bankruptcy Court could have believed at the start of the case that the mere existence of the Pre-Petition Facility or the approval of the DIP Facility rendered all reclamation claims valueless.  Yet that is the position Appellee now asserts, making the adoption of the Reclamation Procedures Order at the same time as the DIP Facility was approved an idle act or a trap.  *See* Part IV.

---

[1]     Unless otherwise stated, statutory references are to title 11 of the United States Code, 11 U.S.C. §§ 101 *et seq.* (the "Bankruptcy Code").

[2]     Capitalized terms not defined herein have the meaning ascribed to them in *Appellant Paramount Home Entertainment Inc.'s Opening Brief* [Docket No. 7] (the "Opening Brief"). References to "ROA" are to *Appellant's Record on Appeal* [Docket No. 8] and references to "AROA" are to Appellee's *Designation of Record on Appeal* [Docket No. 9].

4.      The prior lien defense as articulated by Appellee and applied by the Bankruptcy Court does not make sense.  Rendering worthless every reclamation claim simply because each claim does not exceed the amount of secured debt – although the total claims and available assets exceed the secured debt – leads to illogical results that are not and cannot be the law.  *See* Part V.

5.      The DIP Order did not find that the DIP Lenders are good faith purchasers without knowledge of Paramount's Reclamation Claim under the Virginia UCC; thus the DIP Order could not and does not establish that the DIP Lenders' liens extinguish, or take priority over, Paramount's Reclamation Claim.  *See* Part VI.

6.      Given the parties' agreement that Paramount's Reclamation Claim arose under Virginia's version of Article 2 of the UCC, Paramount's right to reclaim specific goods extends to the identifiable proceeds of those goods, just as it would under the UCC.  *See* Part VII.

7.      The Bankruptcy Court improperly granted summary judgment in the face of Paramount's showing under Fed. R. Civ. P. 56(f) that it needed further relevant discovery.  *See* Part VIII.

For all of these reasons and those set forth in greater detail in the Opening Brief, Paramount requests that this Court reverse the summary judgment and remand this matter to the Bankruptcy Court with instructions to have Appellee pay Paramount's Reclamation Claim in full to the extent any surplus proceeds remained after satisfaction of any prior claims secured by the goods subject to reclamation.

## II.
## APPELLEE PREMISES ITS ARGUMENT ON THE WRONG STANDARD OF REVIEW

Appellee seeks to uphold the Bankruptcy Court's decision on an incorrect standard of review, contending that "this Court should review the Bankruptcy Court's findings of fact for

clear error."  Appellee's Brief, at 1 (citing a sole unpublished decision, <u>Gilliam v. Hovis (In re</u> <u>Marine Energy Sys. Corp.)</u>, 2010 U.S. Dist. LEXIS 31510 (D.S.C. Mar. 31, 2010)).[3]

That proposition is wrong because "summary judgment should be granted only where it is clear that there is no dispute about the facts or inferences to be drawn therefrom," <u>Mercantile</u> <u>Peninsula Bank v. French (In re French)</u>, 499 F.3d 345, 359 (4th Cir. 2007), such that "it [is] inappropriate to make such findings of fact and resolve . . . conflicts in the evidence on summary judgment." *Id.; accord,* <u>Spannaus v. U.S. Dep't of Justice</u>, 813 F.2d 1285, 1288 (4th Cir. 1987) ("Any findings of fact made on a summary judgment motion, however, are not 'entitled to the protection of the 'clearly erroneous' rule on review.'").

To the extent the Bankruptcy Court made factual findings on controverted issues – *e.g.*, that the DIP Lenders were good faith purchasers or that Paramount's goods were sold before the DIP Lenders were paid in full – not only are they entitled to no deference, but making and relying upon such findings is itself reversible error.  <u>Hunt v. Cromartie</u>, 526 U.S. 541, 552 (1999).

### III.
### <u>APPELLEE MISINTERPRETS THE PLAIN LANGUAGE OF SECTION 546(c)</u>

Section 546(c) only requires sellers asserting rights of reclamation to "demand[] in writing reclamation of such goods — (A) not later than 45 days after the date of receipt of such goods by the debtor; or (B) not later than 20 days after the date of commencement of the case, if the 45-day period expires after the commencement of the case."  11 U.S.C. § 546(c)(1). Appellee's attempt to engraft onto Section 546(c) additional steps, requiring a reclaiming vendor

---

[3]     While *Marine Energy* (erroneously and without any analysis) purported to apply a clear error standard, 2010 U.S. Dist. LEXIS 31510 at *14, the reviewing court never explained what findings of fact it reviewed that were supposedly decided below on summary judgment. Moreover, the bankruptcy court had determined that there were no genuine issues of material fact, so it is unclear what factual findings could be reviewed.  *See* <u>Hovis v. Gilliam, (In re</u> <u>Marine Energy Sys. Corp.)</u>, 2009 Bankr. LEXIS 1273 (Bankr. D.S.C. Mar. 24, 2009).

to seek an injunction or relief from the automatic stay, finds no support in, and is contrary to, the statutory language.[4]

In the Opening Brief, at 10-13, Paramount set forth the case law and policy reasons in support of a plain meaning interpretation of the statute, *i.e.*, that nothing more than making a demand is required. Appellee's Brief cites several contrary bankruptcy court decisions, but those cases primarily rely on language deleted from the current version of Section 546(c) that contemplated that the bankruptcy court might deny reclamation notwithstanding a timely demand. The only post-BAPCPA case Appellee cites is In re First Magnus Finance Corp., 2008 WL 5046596 (Bankr. D. Ariz. Oct. 16, 2008), which concludes – without citation to the statute or case authority – that "if the Debtor simply ignores the demand, the creditor **may** lose its rights." *Id.* at *2 (emphasis added).

Even pre-BAPCPA, the authority for the proposition advanced by the Appellee and *First Magnus* was thin. The only Court of Appeals case to decide the issue, In re Griffin Retreading Co., 795 F.2d 676, 679-80 (8th Cir. 1986), and the only Bankruptcy Court decision in this Circuit, In re Georgetown Steel Co., 318 B.R. 340, 348 (Bankr. D.S.C. 2004), held to the contrary. Opening Brief, at 11. In any event, the deletion of the language regarding the Bankruptcy Court's ability to deny reclamation under revised Section 546(c) settles the issue by making a demand the sole prerequisite to relief.

Paramount satisfied the only statutory requirement for establishing its right to reclamation by timely delivering its Reclamation Demand. Appellee violated Paramount's rights by not returning the goods and, instead, sold them and converted the proceeds. *See* Opening Brief, at 28 (noting that the right of reclamation is premised upon "the proposition that any receipt of goods on credit by an insolvent buyer amounts to a tacit business misrepresentation of

---

[4]   Notably, the applicable Reclamation Procedures Order also only required that a reclaiming vendor submit a timely written demand in a specified form and manner and Paramount met this requirement. *See* Part IV.

solvency and therefore is fraudulent as against the particular seller."). Therefore, the Bankruptcy Court erred in concluding that Paramount's Reclamation Claim should be reclassified as a general unsecured claim on the basis that Paramount did not diligently pursue its claim. Once Paramount made its demand, it was Appellee that acted wrongfully and neither it nor unsecured creditors should benefit by that wrong. *Id.* (citing case law).

## IV.
## APPELLEE IS ENTITLED TO NO REWARD BECAUSE IT FAILED TO FOLLOW THE LAW AND THE RECLAMATION PROCEDURES IT ESTABLISHED, NOR SHOULD THOSE FAILURES DISADVANTAGE PARAMOUNT

Once Paramount gave the statutory notice and complied with the Reclamation Procedures Order, Appellee was not permitted to unilaterally destroy Paramount's right of reclamation by disposing of Paramount's goods without affording Paramount some form of compensation or opportunity to preserve the economic value of its rights in the property. "[T]he willingness of courts to leave debtors in possession is premised upon an assurance that the officers and managing employees can be depended upon to carry out the fiduciary responsibilities of a trustee . . . [and] to treat all parties . . . fairly." Commodity Futures Trading Comm. v. Weintraub, 471 U.S. 343, 355-56 (1985). The Bankruptcy Court's ruling perversely rewards the Appellee for not upholding its statutory duties as debtor-in-possession.

Appellee filed a chapter 11 petition, thereby invoking all the protections of the Bankruptcy Code. Those protections and Appellee's status as a debtor-in-possession came at a price, including obedience to the Bankruptcy Code. *See* 11 U.S.C. § 1107(a). Paramount, although deprived of its nonbankruptcy remedies, retained its reclamation right and was not left remediless. Far from sleeping on its rights, Paramount diligently served its Reclamation Demand in accordance with Section 546(c) and complied with the Reclamation Procedures Order, and later timely asserted a right to payment on account of its reclamation right in the form of a proof of claim as required by Fed. R. Bankr. P. 3003. But Appellee contends that was not enough, and answers that it can simply ignore Paramount's Reclamation Demand even after seeking and obtaining a court order establishing a process intended to induce reclamation claimants to forego

litigation on the pretense that it would respect such demands and process and remunerate the holders of valid claims.  Appellee's Brief, at 13 & 19.

Specifically, in the *Motion of Debtors for Order … (IV) Establishing Procedures for Reclamation Demands*, Appellee urged as the basis for relief that "[a]bsent the relief requested in this Motion, the Debtors would be required to expend substantial time and limited resources … contesting or litigating reclamation demands." ROA: 6.  The Motion continued: "The Debtors believe that many Vendors will attempt to assert their right to reclaim Goods delivered to the Debtors shortly before or soon after the Petition Date.  In the absence of approved procedures for orderly processing and reconciling such demands (the 'Reclamation Demands'), the Debtors' operations and access to needed materials and goods might be disrupted."  ROA: 9.  Now apparently we are to believe that the "orderly processing and reconciling [of reclamation] demands" means only "appeasing claimants by filing away written reclamation demands until we can sell the goods" and that a prudent vendor would never stand down from litigating a reclamation claim in reliance on a court order establishing such a procedure.

Moreover, the Reclamation Procedures Order did not simply permit "Debtors … to return to Vendors Goods that were delivered prepetition for an offset of the purchase price of such Goods against the Vendors' prepetition claims," ROA: 342-43, it also authorized them "[i]n the event that the Debtors and the Reclamation Claimant agree upon the Allowed Reclamation Amount . . . to make payment in such amount."  *Id.* at 344.  It is incomprehensible that the same debtor and Bankruptcy Court that established that order both now ascribe to the belief that a reclaiming vendor's sole remedy is the return of goods and prudence requires a vendor to immediately and urgently commence litigation in the Bankruptcy Court to protect its statutory right.

Appellee's only explanation of the preceding paradox is to argue that a few words spoken by its counsel at a first day hearing held on 48 hours notice at the chaotic commencement of a major chapter 11 suggested that the Reclamation Procedures Order did not prohibit reclaiming vendors from obtaining an injunction in an adversary proceeding.  Appellee's Brief, at 15 & 29.

This supposedly made clear that Paramount should have immediately moved for relief from stay. ROA: 2028; Appellee's Brief, at 14.   Many arguments, discussions and positions may be advanced at a hearing, but "it would be intolerable to allow parties to assert rights in defiance of the language chosen by the court to fix their rights; that is the very purpose of the order."   In re Crosby Stores, Inc., 65 F.2d 360, 361 (2d Cir. 1933); Myers v. United States, 297 B.R. 774, 780 (S.D. Cal. 2003) ("what controls is the language of the final order").

Although Appellee argues that it has done nothing wrong, it does not dispute the contention in the Opening Brief that it solicited reclamation demands only to then ignore them and sell the goods subject to the demands without accounting for the proceeds.  *See* Appellee's Brief, at 29-30.  In fact, rather than argue that it did not engage in this behavior, Appellee blames Paramount contending "Paramount should have closely monitored the refinancing of the Pre-Petition Credit Facility and the GOB Sales to determine whether any Paramount Goods remained after the DIP Lenders were repaid."  *Id.* at 25.

Even if the "morals of the marketplace" permitted this kind of bait and switch, chapter 11 debtors in possession and their attorneys are fiduciaries held to a higher standard.

> Many forms of conduct permissible in a workaday world for those acting at arm's length, are forbidden to those bound by fiduciary ties.  A trustee is held to something stricter than the morals of the market place.  Not honesty alone, but the punctilio of an honor the most sensitive, is then the standard of behavior.  As to this there has developed a tradition that is unbending and inveterate.  Uncompromising rigidity has been the attitude of courts of equity when petitioned to undermine the rule of undivided loyalty by the disintegrating erosion of particular exceptions [].  Only thus has the level of conduct for fiduciaries been kept at a level higher than that trodden by the crowd.  It will not consciously be lowered by any judgment of this court.

Meinhard v. Salmon, 164 N.E. 545, 546 (N.Y. 1928) (Cardozo, J.) (internal quotation marks and citations omitted); *accord*, In re Republic Fin. Corp., 128 B.R. 793, 802 (Bankr. N.D. Okla. 1991) ("A debtor-in-possession in bankruptcy is the equivalent of a Trustee, 11 U.S.C. § 1107(a), and is therefore a fiduciary and is expected to act like one . . .[¶]  A Ch. 11 bankruptcy case is admittedly a trust of an unusual type, whose obligations may be unusually difficult and even contradictory.  But the administrator of such a case, whether Trustee or debtor-in-

possession or attorney of either, remains a fiduciary who must be held to the high standards of conduct demanded of all fiduciaries, with due allowance for the peculiarities of Ch. 11 bankruptcy cases.").

Now that Appellee has sold the goods subject to Paramount's Reclamation Demand, for Appellee to argue that Paramount's only remedy was to seek relief from the stay to retake its goods rather than follow the Reclamation Procedures Order is more than unjust. It turns upside down the basic bargain embodied in the Bankruptcy Code that suspends creditor rights in exchange for the appointment of a fiduciary bound "to treat all parties . . . fairly."

Even if one accepts that Appellee did not set out to deceive the reclaiming vendors at the start of this case, it has certainly acted opportunistically in shifting its position. Regardless of Appellee's intent, a determination of which is not necessary here, Paramount should not lose its valuable right of reclamation as the result of following the procedure for asserting that right established by the Bankruptcy Court on Appellee's motion. Appellee plainly could have declined to seek an order at all, or (given that it drafted the order in question) could have stated plainly in the Reclamation Procedures Order that reclaiming vendors would lose whatever protections they had if they did not promptly seek injunctive relief and physically reclaim their goods. Appellee did neither of these things because it wanted to move forward with a prompt sale and not suffer delay occasioned by litigation from reclaiming vendors exercising rights expressly protected by the Bankruptcy Code. Fair enough, but Appellee cannot now be heard to say that the Reclamation Procedures Order and the language and procedures it put in place as an alternative to forestall that litigation and delay are meaningless.

## V.
## DANA'S APPLICATION OF THE PRIOR LIEN DEFENSE IS NOT GOOD LAW

The Bankruptcy Court and Appellee rely heavily upon In re Dana Corp., 367 B.R. 409, 421 (Bankr. S.D.N.Y. 2007). As the Opening Brief, at 18-21, sets out, *Dana* is wrong and should not be adopted by this Court. It does not make sense that the mere existence of prior floating liens securing an obligation greater in amount than any individual reclamation right

renders all reclamation rights worthless on day one of the case regardless of whether those prior lienholders are actually satisfied out of the goods subject to reclamation. Yet this is exactly the rule that *Dana* invented, what the Bankruptcy Court held below, and what Appellee has advanced as the state of the law.

Appellee argues that prior to BAPCPA, a majority of courts applied the prior lien defense, *see* Appellee's Brief, at 25-26 (citing pre-BAPCPA cases), but then dismisses the cases holding to the contrary on the basis that they were decided under the old version of Section 546(c). *Id.* at 26. The significant decision of the Sixth Circuit Court of Appeals in Phar-Mor, Inc. v. McKesson Corp. (In re Phar-Mor, Inc.), 534 F.3d 502, 507 (6th Cir. 2008), *cert. denied*, 129 S. Ct. 2053 (2009), is quickly dismissed by Appellee on the basis that it was decided under the pre-BAPCPA Section 546(c).[5] Appellee's Brief, at 26.[6] Yet the import of *Phar-Mor* is that upon consideration of the prior lien defense as applied in *Dana*, and with full awareness that *Dana* was decided under the revised statute, the Sixth Circuit held that *Dana* could not be relied upon because its holding

---

[5]   As the Supreme Court has recently admonished, however: "Pre-BAPCPA bankruptcy practice is telling because we will not read the Bankruptcy Code to erode past bankruptcy practice absent a clear indication that Congress intended such a departure." Hamilton v. Lanning, 2010 U.S. LEXIS 4568, *22 (June 7, 2010) (quotation marks and citations omitted). Thus the uniform pre-BAPCPA practice of affording reclamation claimants who timely asserted their rights an administrative priority claim in lieu of reclamation, coupled with the acknowledged congressional purpose in BAPCPA of revising Section 546(c) to strengthen the rights of reclaiming vendors, is plainly relevant to construing the revised version of Section 546(c) before the Court. An administrative priority claim has always been available to a vendor who is denied its right to reclaim goods. This result sensibly balances the needs of the bankruptcy estate to maintain the integrity of its inventory pending sale or reorganization, and the economic and legal rights of the reclamation claimant. There is no reason to think that in amending Section 546(c), Congress intended to abrogate this sensible and established pre-BAPCPA practice or to otherwise dilute the rights of reclamation claimants.

[6]   Appellee also attempts to distinguish *Phar-Mor* on the basis that it was decided under state law. To the extent that *Phar-Mor* relied upon Ohio state law, that does not present a distinction worth noting, because the state law upon which it relied was the UCC. Virginia, like every state that has adopted the UCC, declares that one of its purposes is "to make uniform the law among the various jurisdictions." Va. Code Ann. § 8.1A-103(a)(3).

was "not practical and [its] reasoning not compelling." *Phar-Mor*, 534 F.3d at 507. There is no basis on which Appellee can distinguish these damning words from the Sixth Circuit.

To show the lack of sense in applying the *Dana* rule, Paramount laid out a clear hypothetical exposing its ridiculousness, *see* Opening Brief, at 18-19,[7] but amazingly Appellee contends that because Paramount has no right to marshal, the bizarre result suggested by the example correctly states the law. Appellee's Brief, at 23-24.[8]

Even without marshaling, due to the denial of Paramount's discovery, it must be assumed in the context of this appeal that all or some of Paramount's goods remained in Appellee's possession after all prior liens were satisfied. There is certainly no reason to extinguish Paramount's right before determining this fact solely on the basis that the secured creditor ***could have*** satisfied its debts from the goods subject to reclamation if it wished.[9] This error provides another basis to reverse.

---

[7] The hypothetical laid out by Paramount was: If a debtor has inventory on the petition date of $1 billion equally divided among 1,000 vendors (*i.e.*, $1 million each) and owes its bank $1.5 million on the petition date, and that $1.5 million bank debt is secured by the $1 billion in inventory, then because $1.5 million is more than the $1 million owed each reclaiming vendor – and notwithstanding that there is a billion dollars of goods securing the bank claim – all of the 1,000 vendors' reclamation claims are rendered worthless. Opening Brief, at 18-19.

[8] Marshaling may actually be an entirely reasonable remedy in this case. Despite Appellee's representation that the law is clearly opposed to marshaling in this context, some courts have suggested that reclaiming vendors may compel marshaling. *See, e.g.,* In re Quality Stores, Inc., 289 B.R. 324, 335 n.19 (Bankr. W.D. Mich. 2003) (noting that a subordinate reclaiming seller might seek to compel a superior secured creditor to marshal and satisfy its secured claim from assets other than the goods delivered by the subordinate reclaiming seller); In re Suwannee Swifty Stores, Inc., 2000 Bankr. LEXIS 2005, *10 (Bankr. M.D. Ga. March 22, 2000) (also suggesting marshaling was available in the context of reclamation).

[9] In another context, assuming without evidence that a creditor with senior rights satisfied its claim from the goods subject to another creditor's interest has been labeled "reverse marshaling" and condemned. *See* In re Center Wholesale, Inc., 788 F.2d 541, 542 n.1 (9th Cir. 1986) (rejecting "a valuation formula that would reduce the value of the junior security interest by the value of the senior security interest without considering whether the senior

*(Continued on next page)*

## VI.
### THE BANKRUPTCY COURT'S ASSUMPTION THAT THE DIP LENDERS WERE GOOD FAITH PURCHASERS UNDER THE UCC WAS UNWARRANTED

As Paramount served its Reclamation Demand establishing its right of reclamation prior to the date the DIP Facility was incurred, the DIP Lenders do not qualify as "prior" lienholders under Section 546(c).[10]  The only question regarding the DIP Lenders' rights is whether they hold senior rights in the goods subject to Paramount's Reclamation Demand because they are "good faith purchasers" under the UCC.  Appellee states that because the Bankruptcy Court found that the DIP Lenders were good faith lenders entitled to the protection from reversal on appeal of the DIP Orders approving the DIP Facility under Section 364(e), Paramount cannot now argue that the DIP Lenders are not "good faith purchasers" in the context of Paramount's Reclamation Claim.  *See* Appellee's Brief, at 29.  Yet Appellee has not shown that the findings made by the Bankruptcy Court in the DIP Orders would be the same as, sufficient or even relevant to the findings necessary to determine whether they were good faith purchasers in the context of reclamation, which is a state law question defined by the UCC.

Importantly, the Bankruptcy Code and UCC standards are not identical.  Under Section 364, a post-petition lender can only be protected from reversal of the grant of its lien or priority, if the court finds that the lender acted in good faith.  *See* 11 U.S.C. § 364(e).  Although "good faith" is not defined in the Bankruptcy Code, it has been defined in the context of Section 364(e) to mean "honesty in fact in the conduct or transaction concerned."  3 COLLIER ON BANKRUPTCY ¶ 364.06  (15th ed. rev. 2009) (citing Unsecured Creditors' Comm. v. First Nat'l Bank & Trust Co. of Escanaba (In re Ellingsen MacLean Oil Co.), 834 F.2d 599, 605 (6th Cir. 1987)).  Under the

---

secured party actually obtained satisfaction from some or all of the assets to which the junior interest attached.").

[10]   Appellee attempts to cloud this issue by reciting the date on which the Bankruptcy Court authorized Appellee to incur the DIP Facility (*i.e.* November 10, 2008), *see* Appellee's Brief, at 27-28, but Appellee did not actually incur the obligation and use the proceeds to pay the Pre-Petition Lenders until November 12, 2008.  ROA: 928-29.

UCC, as adopted in Virginia, good faith is defined as "honesty in fact *and the observance of reasonable commercial standards of fair dealing in the trade.*"   Va. Code Ann. § 8.2-103 (emphasis added).  The Bankruptcy Court's findings of good faith in the DIP Orders are lacking of any analysis and there is no indication that the Bankruptcy Court made any finding in connection with the standard under the UCC.  *See* ROA: 305; AROA: 13-14.  No one disputes that the DIP Lenders are entitled to Section 364(e) protection; the only relevant questions are whether (i) the mere existence of the DIP Lenders' lien extinguished reclamation rights even if the DIP Lenders are repaid in full and a surplus attributable to goods subject to reclamation exists and (ii) the DIP Lenders are entitled to priority over reclamation claims as *bona fide* purchasers without knowledge.  On these issues the DIP Order is absolutely silent.

Subjecting the rights of a reclaiming seller to those of a good faith purchaser reflects the historical practice under Virginia common law, which remains the law under the UCC.  In particular, courts consider whether a purchaser had notice of the reclaiming vendor's interest in deciding whether or not the purchaser had obtained the goods in good faith.  Oberdorfer v. Meyer, 13 S.E. 756, 757 (Va. 1891), *cited with approval*, Toyota Motor Credit Corp. v. C.L. Hyman Auto Wholesale, Inc., 506 S.E.2d 14, 16 (Va. 1998); *see also, Phar-Mor*, 534 F.3d at 506.  It has never been alleged that the DIP Lenders lacked notice that reclamation demands had been asserted against Appellee, and it is difficult to believe that could be true given the concurrently filed Motion for the Reclamation Procedures Order (ROA: 1), which posits the existence of large numbers of reclamation claims.  In any event, for purposes of summary judgment, the Bankruptcy Court needed to assume the DIP Lenders had notice because Paramount was not permitted to complete its discovery on that precise question.  ROA: 1252-53.  In short, the counter-factual assumption that the DIP Lenders did not know about Paramount's reclamation rights cannot be a basis to affirm the summary judgment.

## VII.
## RECLAMATION IS A STATE LAW RIGHT AND, THEREFORE, PARAMOUNT HAS A RIGHT TO PROCEEDS

Appellee's two arguments that reclamation does not extend to proceeds are both erroneous.  Paramount's reclamation right does in fact extend to the proceeds of its goods to the extent that those proceeds did not directly satisfy any prior lienholder.

Appellee first argues (and the Bankruptcy Court similarly held) that, under state law, the right of reclamation does not extend to proceeds.  *Id.* at 17; ROA: 2033.  Paramount argued in the proceedings below and has reiterated to this Court in its Opening Brief that the state law right of reclamation does and should extend to proceeds.  *See* Opening Brief, at 24 (citing Pester Refining Co. v. Ethyl Corp. (In re Pester Refining Co.), 964 F.2d 842, 846 (8th Cir. 1992) ("[A]fter the secured creditors' superior interests have been satisfied or released, the reclaiming seller retains a priority interest in any remaining goods, and in any surplus proceeds from the secured creditors' foreclosure sale."); United States v. Westside Bank, 732 F.2d 1258, 1263 (5th Cir. 1984) (holding that under the UCC, the reclamation right extends to proceeds because "to hold otherwise would in many instances render the statutory remedy a nullity"); *Georgetown Steel*,  318 B.R. at 348-49; In re ARLCO, Inc., 239 B.R. 261, 267 (Bankr. S.D.N.Y. 1999) ("[W]hen the reclaiming seller's goods or traceable proceeds from those goods are in excess of the value of the superior claimant's claim . . . the reclaiming seller will be allowed either to reclaim the goods or receive an administrative claim or lien in an amount equal to the goods that remain after the superior claim has been paid."); In re Victory Mkts., 212 B.R. 738, 743 (Bankr. N.D.N.Y. 1997) ("[T]he reclaiming seller retains a priority interest in any goods remaining and in any surplus proceeds remaining after the superior secured creditor's interests have been satisfied or released."); In re Child World, 145 B.R. 5, 8 (Bankr. S.D.N.Y. 1992) ("[A]fter the secured creditors' superior interests have been satisfied or released, the reclaiming seller retains a priority interest in any remaining goods, and in any surplus proceeds from the secured creditors' foreclosure sale."); 4 White & Summers, UNIFORM COMMERCIAL CODE, § 32-11 (6th ed. 2005) ("[A] seller of goods in compliance with statutory requirements for reclamation of goods retains priority status to the

traceable proceeds from the sale of goods seller seeks to reclaim, but takes subject to the rights of prior perfected secured lenders.")).[11]   Further, although there is no authority directly from the Virginia courts interpreting Virginia's statute adopting UCC § 2-702, it is proper to presume that Virginia law is consistent with this wealth of authority particularly in light of the interest in uniform application of the Uniform Commercial Code.  Va. Code Ann. § 8.1A-103(a)(3).

In its second argument, Appellee contends that even if state law provides the right to reclaim proceeds, under Section 546(c), Paramount has no right to the proceeds of its goods. Appellee's Brief, at 17.  But this argument is entirely at odds with one of the basic premises of Appellee's Brief – that reclamation is a state law right and that Section 546(c) does not create a separate federal right of reclamation.  *See, e.g., id.* at 14.  Because the state law right of reclamation ***does*** extend to proceeds and because the parties agree that reclamation originates in a state law right, Paramount cannot be denied the right to reclaim the proceeds of its goods on the basis that the word "proceeds" appears nowhere in Section 546(c).   Therefore, the Bankruptcy Court erred in denying Paramount the right to reclaim the proceeds of its goods to the extent that those proceeds were not used to pay the obligations secured by the prior liens in the inventory.

## VIII.
## <u>FURTHER DISCOVERY IS ESSENTIAL TO DETERMINE THE VALIDITY AND AMOUNT OF PARAMOUNT'S RECLAMATION CLAIM</u>

Paramount sought and was denied additional discovery.  ROA: 1247-53.  This mattered because there were at least four significant categories of questions that Paramount was entitled to enquire into but precluded from doing so:

---

[11]   Appellee's repeated reliance on cases stating nothing more than that reclamation is an *in rem* right, *see* Appellee's Brief, at 10-11, adds nothing to its argument that Paramount should not be entitled to recover proceeds.  Paramount's position is that following Appellee's sale of its goods (other than in satisfaction of what is ultimately determined to be a prior lien in those goods), its *in rem* right in the goods has become an *in rem* right in the proceeds.

14

1.   What knowledge did the DIP Lenders have of reclamation rights in the goods included in its collateral under the DIP Facility at the time of the incurrence of the DIP Facility?

2.   When were sufficient goods sold at the GOB sales to satisfy the DIP Lenders?

3.   Which of the goods subject to Paramount's right of reclamation were in Appellee's possession after sufficient proceeds to satisfy the DIP Lenders had been collected?

4.   What steps, if any, did Appellee take in response to the reclamation demands, including any accounting for proceeds?

Paramount submits that it is impossible to make any determination as to the validity and amount of its Reclamation Claim, until these (and reasonable follow up) questions are answered. Because the Bankruptcy Court denied Paramount's request that it be allowed to complete discovery prior to the grant of summary judgment, the Bankruptcy Court was required to make all factual inferences in favor of Paramount.  The fact that it did not do so further supports reversal of the summary judgment.

## IX.
## CONCLUSION

On *de novo* review of the Bankruptcy Court's Order, Paramount believes it is evident that the Bankruptcy Court erred in reclassifying its Reclamation Claim as a general unsecured claim on summary judgment and that Appellee repeats those mistakes in its arguments before this Court.  For all of the reasons set forth above and in the Opening Brief, Paramount prays that the Order be reversed and the matter remanded to the Bankruptcy Court with instructions that Paramount is entitled to a remedy for its valid Reclamation Claim and should be paid in full to the extent the proceeds of its goods did not satisfy what is ultimately decided (after appropriate consideration) to be a prior lien under Section 546(c).

DATED: June 21, 2010                    Respectfully submitted,


KLEE, TUCHIN, BOGDANOFF & STERN LLP     KEPLEY BROSCIOUS & BIGGS, PLC

By: _____         By:___/s/____William A. Broscious_____
    David M. Stern (Admitted *Pro Hac Vice*)      William A. Broscious
    Korin A. Elliott (Admitted *Pro Hac Vice*)    (VA State Bar No. 27436)
    1999 Avenue of the Stars, 39th Floor          2211 Pump Road
    Los Angeles, CA 90067                         Richmond, Virginia  23233
    Tel: (310) 407-4000                           Tel: (804) 741-0400 ext. 202
    Email: dstern@ktbslaw.com                     Email: wbroscious@kbbplc.com


16

## CERTIFICATE OF SERVICE

I, Marcy Serpas, hereby certify that a true and correct copy of the foregoing *Appellant Paramount Home Entertainment Inc.'s Reply Brief* has been served upon the parties listed below via first class mail on this 22nd day of June, 2010.

*/s/      Marcy Serpas*

Marcy Serpas (mserpas@ktbslaw.com)

| **Debtors' Counsel** | **Counsel for the Creditors' Committee** |
|---|---|
| SKADDEN, ARPS, SLATE, MEAGHER & FLOM, LLP<br>Attn:  Greg M. Galardi and Ian S. Fredericks<br>One Rodney Square<br>10th and King Streets, 7th Fl.<br>Wilmington, DE  19801<br><br>SKADDEN, ARPS, SLATE, MEAGHER & FLOM, LLP<br>Attn:  Chris L. Dickerson<br>155 N. Wacker Drive<br>Chicago, IL  60606<br><br>MCGUIRE WOODS LLP<br>Attn:  Douglas M. Foley and Dion W. Hayes<br>901 E. Cary Street<br>Richmond, VA  23219 | PACHULSKI STANG ZIEHL & JONES, LLP<br>Attn:  Richard M. Pachulski, Jeffrey N. Pomerantz, and Stanley E. Goldich<br>10100 Santa Monica Blvd., 11th Fl.<br>Los Angeles, CA  90067<br><br>PACHULSKI STANG ZIEHL & JONES, LLP<br>Attn:  Robert J. Feinstein<br>780 Third Avenue, 36th Floor<br>New York, NY  10017<br><br>TAVENNER & BERAN, PLC<br>Attn:  Lynn L. Tavenner and Paula S. Beran<br>280 N. Eighth Street, 2nd Fl.<br>Richmond, VA  23219 |
| **Office of the U.S. Trustee**<br>Attn:  Robert B. Van Arsdale<br>701 East Broad Street, Suite 4304<br>Richmond, VA  23219 | |