UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
RICHMOND DIVISION

PARAMOUNT HOME ENTERTAINMENT
INC.,

                                    Appellant,

    v.                                                          Action No. 3:10–CV–316

CIRCUIT CITY STORES, INC. , et al.,

                                    Appellees.

## MEMORANDUM OPINION

This matter is before the Court on Paramount Home Entertainment Inc.'s appeal of

the Bankruptcy Court's decision granting summary judgment in favor of Debtors (Dock. No.

1).  For the reasons stated below, the Court will DENY the appeal and AFFIRM the decision

of the Bankruptcy Court.

## I. BACKGROUND

The Debtors (appellees here), Circuit City Stores, Inc., et al.,[1] filed for Chapter 11

bankruptcy on November 10, 2008 (the "Petition Date").  Circuit City was a national

retailer of consumer electronics, which, prior to bankruptcy, employed nearly 40,000

---

[1] The Debtors are Circuit City Stores, Inc., Circuit City Stores West Coast, Inc., InterTAN, Inc., Ventoux International, Inc., Circuit City Purchasing Company, LLC, CC Aviation, LLC, CC Distribution Company of Virginia, Inc., Circuit City Properties, LLC, Kinzer Technology, LLC, Abbott Advertising Agency, Inc., Patapsco Designs, Inc., Sky Venture Corp., Prahs, Inc. (n/a), XSStuff, LLC, Mayland MN, LLC, Courchevel, LLC, Orbyx Electronics, LLC, and Circuit City Stores PR, LLC. Upon request of the Debtors, the Bankruptcy Court administered these bankruptcy cases jointly.

employees and operated over 700 retail stores across the United States.  Appellant

Paramount Home Entertainment, Inc. claims to have sold goods to Circuit City in the

ordinary course of business during the 45-day period preceding the Petition Date and to

have made timely Reclamation Demands for the return of those goods that were ultimately

unlawfully ignored.

Prior to the Petition Date, a number of the Debtors, including Circuit City, had

entered into a revolving credit facility (the "Pre-petition Credit Facility") with Bank of

America, N.A., as agent.  The lenders under the Pre-petition Credit Facility (the

"Pre-petition Lenders") had made advances under the Facility that were secured by first

priority liens on substantially all of the Debtors' assets, including all of the Debtors' existing

and after-acquired inventory as well as the proceeds thereof.

Simultaneously with the filing of their bankruptcy petitions, the Debtors sought and

obtained authority to enter into a post-petition, debtor-in-possession, secured financing

facility (the "DIP Financing Facility").  All obligations under the DIP Financing Facility were

secured by substantially all of the Debtors' existing and after-acquired assets, including

"inventory" and the proceeds thereof.  The Debtors used the DIP Financing Facility to repay

all of the outstanding indebtedness under the Pre-petition Credit Facility as well as to

finance their ongoing post-petition operations, which they conducted as a debtor-in-

possession in accordance with 11 U.S.C. §§ 1107 and 1108.

On November 11, 2008, Paramount served its reclamation demand, requesting the

return of its products delivered to and accepted by Circuit City while insolvent in the

ordinary course of business within the 45-day period preceding Debtor's petition date.

Specifically, Paramount demanded the return of $11,600,840.04 worth of goods, alleging

that it was entitled to reclaim the goods pursuant to the UCC and the California Commercial

Code.[2]

On November 13, 2008, the Bankruptcy Court entered the fray by issuing an Order

(the "Reclamation Procedures Order") that required claimants seeking to reclaim goods to

file reclamation demands no later than 20 days following the Petition Date.  Each claimant

was required to include with its reclamation demand the information required by

Bankruptcy Code § 546(c).  The Order expressly provided that:

> Nothing in this Order or the above procedures is intended to prohibit,
> hinder, or delay any Reclamation Claimant from asserting or prosecuting
> any of its rights to seek to reclaim goods provided to the Debtors, or affect,
> alter, diminish, extinguish, or expand the rights or interest, if any, to
> recover goods (or proceeds thereof) sought to be reclaimed.

(Reclamation Order 6.)  Although Paramount had already sent its reclamation demand to

Circuit City before the Order was entered, Paramount says the demand complied with the

Order's requirements.

The Reclamation Procedures Order required the Debtors to advise each reclamation

claimant of the allowed amount, if any, of its reclamation demand on or before March 10,

2009.  If no such notice was given, then the Debtors were deemed to have rejected the

---

[2] After serving its demand, Paramount filed a number of claims.  On December 19, 2008, Paramount filed a claim in the amount of $3,201,013.37 that asserted priority status pursuant to Bankruptcy Code § 503(b)(9).  On January 30, 2009, Paramount filed a claim in the amount of $16,497,463.67, of which Paramount asserted that $11,600,840.04 was entitled to priority status pursuant to Bankruptcy Code §§ 546(c) and 507(a)(2) and $3,201,013.37 was entitled to priority claim status pursuant to Bankruptcy Code §§ 503(b)(9) and 507(a)(2).  The remaining $1,695,610.26 was classified as a general unsecured claim.  The unsecured claim and the § 503(b)(9) claim are not at issue here.

reclamation demand.  As Paramount was not sent a notice setting forth an allowed reclamation amount, its demands were deemed rejected by the Debtors on that date.

On January 16, 2009, the Debtors abandoned their efforts to reorganize, and the Court authorized the Debtors to conduct going out of business sales at all of the Debtors' remaining stores (the "GOB sales").  Paramount did not object to the store closing GOB sales.  Paramount never commenced an adversary proceeding, never filed a motion for relief from the automatic stay, or took any other action in pursuit of its Reclamation Demands.  The store closing GOB sales were completed as of March 8, 2009.  On September 29, 2009, the Debtors and the Official Committee of Unsecured Creditors filed their First Amended Joint Plan of Liquidation.  A disclosure statement was approved by order entered September 24, 2009 and a confirmation hearing was set for April 2010.

On June 22, 2009, the Debtors filed their Nineteenth Omnibus Objection to Claims, by which the Debtors sought to reclassify certain filed claims, including Paramount's Reclamation Claim, to pre-petition general unsecured, non-priority claims.  Paramount objected to the reclassification.

To ascertain information relevant to its reclamation claim, Paramount propounded formal discovery from Circuit City, serving interrogatories and requests for documents in November 2009.  Circuit City responded the following month, however, Paramount remains unhappy with the response.

While Circuit City was working on its discovery response, it was also working on its motion for summary judgment on its objections to Paramount's reclamation claims, which it filed on December 18, 2009.  After a hearing on the matter, the Bankruptcy Court held on

March 4, 2010 that Paramount did not have a priority claim, but instead had a general

unsecured claim.  The Court began its analysis with the relevant statutory provision, 11

U.S.C. § 546(c), which states:

> Except as provided in subsection (d) of this section and in section 507
> (c), and subject to the prior rights of a holder of a security interest in
> such goods or the proceeds thereof, the rights and powers of the
> trustee under sections 544 (a), 545, 547, and 549 are subject to the
> right of a seller of goods that has sold goods to the debtor, in the
> ordinary course of such seller's business, to reclaim such goods if the
> debtor has received such goods while insolvent, within 45 days before
> the date of the commencement of a case under this title, but such seller
> may not reclaim such goods unless such seller demands in writing
> reclamation of such goods—
> (A) not later than 45 days after the date of receipt of such goods by the
> debtor; or
> (B) not later than 20 days after the date of commencement of the case,
> if the 45-day period expires after the commencement of the case.

The Court observed that a prior version of the statute did not provide a federal right to

reclamation.  In 2005, however, the Court noted that Congress enacted the Bankruptcy

Abuse Prevention and Consumer Protection Act of 2005 ("BAPCPA"), which changed the

statutory language above by deleting the phrase "the rights and powers of a trustee . . . are

subject to any statutory or common-law right of a seller of goods" and inserting the phrase

"the rights and powers of a trustee . . . are subject to the right of a seller of goods."

Although this changed engendered some debate as to whether BAPCPA had created a

federal right to reclamation, the Bankruptcy Court agreed with the conclusion of the court

in In re Dana Corp., 367 B.R. 409, 416-18 (Bankr. S.D.N.Y. 2007), finding that even after

BAPCPA, there remains no federal reclamation right.  The Court reasoned that the change

in the language merely subordinates the avoiding powers of a trustee under the

Bankruptcy Code to the right of a seller to reclaim its goods under certain conditions.  A

seller's right to reclamation, according to the Court, comes from state law, not the

Bankruptcy Code.

Thus, to prevail, the Bankruptcy Court concluded that Paramount had to prove that

it had a valid right of reclamation under state law.  The Court then noted that the right to

reclaim goods is codified in most states in § 2-702 of the Uniform Commercial Code

("UCC"), which provides that

> (1) Where the seller discovers the buyer to be insolvent he may refuse
> delivery except for cash including payment for all goods theretofore
> delivered under the contract, and stop delivery under this Article (Section
> 2-705).
>
> (2) Where the seller discovers that the buyer has received goods on credit
> while insolvent, the seller may reclaim the goods upon demand made
> within a reasonable time after the buyer's receipt of the goods. Except as
> provided in this subsection, the seller may not base a right to reclaim goods
> on the buyer's fraudulent or innocent misrepresentation of solvency or of
> intent to pay.
>
> (3) The seller's right to reclaim under subsection (2) is subject to the rights
> of a buyer in ordinary course of business or other good -faith purchaser for
> value under Section 2-403. Successful reclamation of goods excludes all
> other remedies with respect to them.

Based on that provision, the Court held that the right to reclaim does not grant any right of

possession, only the limited right to assert a claim for the return of the specific goods.  As

such, UCC § 2-702, the Court said, does not give rise to a lien or security interest in the

goods sold.

Having established the basic benefit of a right of reclamation, the Court then turned

to the procedures a seller must follow to assert that right.  Noting that the right of

reclamation is not self-executing, the Court remarked that at least one of the actions a

seller must take in connection with a purchaser undergoing bankruptcy is to motion for

relief from the automatic stay that is entered in accordance with § 362 of the Bankruptcy

Code which prohibits a creditor from taking any action to pursue reclamation of its goods

once a bankruptcy begins.  But, according to the Court, Paramount never adequately

asserted its reclamation demand.  A written demand or merely following the Court's

Reclamation Procedures Order was, in the Court's view, not enough to gain the protections

of the right of reclamation.  The Court further noted that Paramount allowed the pre-

petition debt to be refinanced post-petition without objection.  Under the UCC, a seller's

right to reclaim is subject to the rights of a buyer in the ordinary course, and therefore, the

Court observed that Paramount, once it received notice that Circuit City planned to use the

goods in connection with the post-petition DIP Financing Facility, should have objected, but

failed to do so.  This failure, however, was, in the Bankruptcy Court's view, not Paramount's

only obstacle to reclamation.  According to the Court, Paramount found itself further down

the line when it failed to object to Circuit City's liquidation of its entire inventory as part of

the closing GOB sales.

The Court continued, observing that even if Paramount had diligently pursued its

reclamation claim, its claim would still fail because at the commencement of the

bankruptcy, the Pre-petition Lenders had a floating blanket lien on all of the Debtors'

assets, including inventory.  Under UCC § 2-702, the Court pointed out, a seller's right to

reclaim is subject to the rights of a good faith purchaser, such as the Pre-petition Lenders.

Accordingly, the Court stated that the prior liens of the Pre-Petition Lenders were greater

than the reclamation claims and thus rendered the reclamation claims "valueless" at the

initiation of the bankruptcy proceedings as merely an unsecured, non-priority claim.

The Court believed that these deficiencies were further compounded by the nature of the right of reclamation.  Once the GOB sales were completed in March of 2009, the Court noted that Circuit City had no Paramount Goods in its possession and thus there was nothing to reclaim.  In so holding, the Court concluded that the right of reclamation is an in rem remedy that under the UCC and the Bankruptcy Code provides a right to reclaim the goods themselves, but does not apply to the proceeds obtained from selling the goods to good faith purchasers or buyers in the ordinary course.

The Bankruptcy Court also rejected Paramount's assertion that it should at a minimum be granted an administrative expense priority.  The Court began by noting that, post-BAPCPA, the statute no longer requires granting an administrative expense if the claimant is prevented from reclaiming its goods unless it is entitled to such a claim under § 503(b)(9), which Paramount has not asserted is at issue here.  Furthermore, the Court noted that it would not grant an administrative expense priority because in order to do so Paramount had to actually and diligently pursue its reclamation claims, which it had failed to do.

As a result, the Court sustained Circuit City's objection to Paramount's reclamation claims, reclassified Paramount's claim as a non-priority, general unsecured claim, and granted summary judgment in favor of Circuit City.  Paramount now alleges that the Bankruptcy Court committed several reversible errors in arriving at that conclusion.

## II. STANDARD OF REVIEW

Summary judgment in bankruptcy is governed by Fed. Rule Bankr. P. 7056, which incorporates the standards of Fed. R. Civ. P. 56 into bankruptcy proceedings.  <u>United</u>

Rentals, Inc. v. Angell, 592 F.3d 525, 530 (4th Cir. 2010).  Thus, the Court must view the

facts and the reasonable inferences drawn therefrom in the light most favorable to the

nonmoving party.  Id. (citing EEOC v. Navy Fed. Credit Union, 424 F.3d 397, 405 (4th Cir.

2005)).  Summary judgment is appropriate if there is no genuine issue of material fact and

the moving party is entitled to judgment as a matter of law.  Id. (quoting Cline v. Wal-Mart

Stores, Inc., 144 F.3d 294, 300 (4th Cir. 1998)).

The district court has jurisdiction to hear appeals from final judgments, orders or

decrees of the bankruptcy court.  28 U.S.C. § 158(a).  When reviewing a decision of the

bankruptcy court, a district court functions as an appellate court and applies the standards

of review generally applied in federal courts of appeal.  In re Webb, 954 F.2d 1102,

1103-04 (5th Cir. 1992).  The Fourth Circuit reviews factual findings for clear error and

conclusions of law de novo.  United Rentals, Inc. v. Angell, 592 F.3d 525, 531 (4th Cir.

2010).  An order granting summary judgment is a legal conclusion subject to de novo

review.  Nader v. Blair, 549 F.3d 953, 958 (4th Cir. 2008).  An order denying a motion to

allow further discovery before ruling on a summary judgment motion is reviewed for an

abuse of discretion.  Id.

## III.  DISCUSSION

Paramount asserts that it complied with the statutory requirements for reclamation

and the Bankruptcy Court's own reclamation procedures, however, in the end, the

Bankruptcy Court erroneously believed that Paramount had to do more to assert its right

of reclamation.  In Paramount's view, § 546(c) provides the sole statutory guidance to a

reclaiming vendor, requiring only that the vendor make a written demand within the

9

statutory period.  Requiring only a written demand, Paramount opines, makes sense

because mandating more adversary proceedings involving the debtor or a race to the

courthouse during the vulnerable initial stages of bankruptcy would be expensive and

create a greater burden on the debtor.  See Williford v. Armstrong World Indus., Inc., 715

F.2d 124, 127 (4th Cir. 1983) ("Bankruptcy is designed to provide an orderly liquidation

procedure under which all creditors are treated equally.  A race of diligence by creditors

for the debtor's assets prevents that.")  Paramount believes that it is appropriate to require

the debtor to hold the goods subject to any reclamation demand until the debtor seeks

specific court authority to otherwise use or dispose of them.  See, e.g., In re Republic Fin.

Corp., 128 B.R. 793, 802 (Bankr. N.D. Okla. 1991) ("A debtor-in-possession in bankruptcy is

the equivalent of a Trustee, 11 U.S.C. § 1107(a), and is therefore a fiduciary and is expected

to act like one . . . .").

Paramount next notes that it also complied with the Bankruptcy Court's own

Reclamation Procedures Order, which was proposed by Circuit City.  Consistent with §

546(c), Paramount claims that the Order only required a reclaiming vendor to submit a

reclamation demand in accordance with the terms of the Order.  Paramount claims that it

reasonably understood compliance with the Order as sufficient to protect its reclamation

rights and should not be penalized for doing precisely what the court order commanded.

As Paramount points out, Circuit City urged the Bankruptcy Court to enter the Order on the

basis that "[a]bsent the relief requested in this Motion, the Debtors would be required to

expend substantial time and limited resources . . . contesting or litigating reclamation

demands."  (R. on Appeal 6.)  Circuit City also stated that "the Debtors believe that many

Vendors will attempt to assert their right to reclaim Goods delivered to the Debtors shortly

before or soon after the Petition Date.  In the absence of approved procedures for orderly

processing and reconciling such demands . . ., the Debtors' operations and access to needed

materials and goods might be disrupted."  (R. on Appeal 9.)  Contrary to the Bankruptcy

Court's representations, Paramount further contends that it actively pursued its

reclamation demand by following its demand with a timely proof of claim in which it

asserted a right to priority treatment for a portion of the claim, responding to Circuit City's

objections to the demand, and propounding formal discovery.

Lastly, for several reasons, Paramount claims that the Bankruptcy Court erred by

holding that the reclamation demand must be "denied" for a reclaiming vendor to be

entitled to any relief and that Paramount's demand was never "denied."  First, Paramount

asserts that the text of § 546(c) does not support the conclusion that a court must "deny" a

reclamation demand to be allowed to grant an alternative remedy.  Second, Paramount

observes that the Bankruptcy Court's Order stated that the Debtor would advise each

reclaiming vendor of the allowed amount of the reclamation demand no later than 120

days after the Petition Date and that if no such response was received, the Debtor would be

deemed to have "rejected" the reclamation demand.  On March 10, 2009, which was 120

days after the Petition Date, Paramount reports that it had not received a response and

thus its demand was deemed rejected on that day.  Paramount claims that there is no

difference between a claim being "rejected" or "denied."

In response, Circuit City contends that the Bankruptcy Court correctly held that

merely submitting the written demand required by § 546(c) is insufficient to meet the

requirements of the right of reclamation.   Circuit City points out that the right of

reclamation is based on state law and that courts across the country have consistently held

that a reclamation claimant has a duty to pursue its demand on a timely basis and with

sufficient diligence in accordance with state law, not the Bankruptcy Code.  Circuit City

observes that Paramount could have, but failed to, commence an adversary proceeding,

seek a temporary restraining order prohibiting the Debtors from using the Paramount

Goods, seek relief from the automatic stay, object to the DIP Orders, or object to the GOB

sales.

        Circuit City also rejects Paramount's argument that the Bankruptcy Court somehow

laid a trap by issuing a Reclamation Order, but then later required Paramount to do more

than simply comply with the Order to secure its rights.  Circuit City says the Reclamation

Order and statements of the Debtors' counsel during a hearing specifically informed

Paramount that it was not precluded from taking any further necessary actions and that

the right to take any such actions was preserved and not prohibited.  Moreover, Circuit City

dismisses Paramount's contention that requiring reclaiming vendors to seek court

protection would result in a race to the courthouse that would weaken the protections of

bankruptcy, stating that this argument has been rejected in similar contexts before.  See In

re Best Prods. Co., 138 B.R. 155, 157 (Bankr. S.D.N.Y. 1992) (rejecting the argument that

"forcing secured creditors to file a motion to receive adequate protection will cause

creditors to inundate the bankruptcy court with such motions at the beginning of a case

and cause unnecessary litigation").

        Addressing Paramount's "denied" versus "rejected" argument, Circuit City believes

that Paramount misunderstands what the Bankruptcy Court's point was in mentioning that

it never "denied" Paramount's claim.  In Circuit City's view, the Bankruptcy Court's point

was that even under the pre-BAPCPA version of the statute, Paramount was not entitled to

an administrative claim or a lien because it had not "denied" the claim.  The point, Circuit

City says, was mainly academic, because the Bankruptcy Court held that the current

version of the statute no longer requires either of those remedies in any event.

Each side has presented its arguments persuasively, however, on the facts of this

case, the Court finds Circuit City's position more compelling.  The decision in Tate Cheese

Co. v. Crofton & Sons, Inc., 139 B.R. 567 (Bankr. M.D. Fla. 1992),[3] provides a useful starting

point to explain that conclusion.  In Tate Cheese, Tate contended it had satisfied the

requirements of § 546(c) as it had a statutory right to reclaim the cheese, Crofton was

insolvent when it received the cheese, a timely written reclamation demand was made, and

Crofton possessed at least a portion of the cheese when it received Tate's reclamation

demand.  Id. at 568.  The Bankruptcy Court held, however, that "although Tate fulfilled the

technical requirements of § 546(c) . . . Tate failed to diligently assert its right of reclamation

and, consequently, has lost that right."  Id. at 569.  As a result of its failure to act by self-help

or through judicial intervention, the court concluded that Tate "lost whatever reclamation

rights it might have had through lack of diligence in asserting those rights."  Id. at 570.

Other courts have agreed with that reasoning.  See, e.g., In re Adventist Living Ctrs., Inc., 52

F.3d 159, 165 (7th Cir. 1995) (denying administrative claim to reclaiming vendor because

---

[3] Although Tate Cheese (and others cited later) were decided pre-BAPCPA, the Court detects no indication that BAPCPA had any effect on the need of a reclaiming vendor to diligently assert its rights.

vendor "slept on its rights"); In re Waccamaw's HomePlace, 298 B.R. 233, 238 (Bankr. D.

Del. 2003) ("[A]fter making its Reclamation Demand [the vendor] inexplicably took no

action to protect or enforce its rights with respect to the Reclamation Goods."); In re

McLouth Steel Prods. Corp., 213 B.R. 978, 986-87 (E.D. Mich. 1997) ("This Court finds that,

where a written notice of reclamation has been properly made on an insolvent buyer and

where the buyer objects to the claim, the reclamation claimant must seek judicial

intervention in order to further perfect and preserve its reclamation claim."); In re

Sunstate Dairy & Food Prods. Co., 145 B.R. 341, 344 (Bankr. M.D. Fla. 1992) (concluding

that to perfect the right of reclamation, the creditor must show "diligent assertion of the

right of reclamation").

The Court agrees with the holding of those cases—a reclaiming seller must

diligently assert its rights while bankruptcy proceedings progress, particularly in the

context of the bankruptcy of such a large company with numerous creditors, such as Circuit

City.  Filing a demand, but then doing little else in the end likely creates more litigation and

pressure on the Bankruptcy Court than seeking relief from the automatic stay imposed by §

362 or seeking a TRO or initiating an adversary proceeding.  In this case, Paramount filed

its reclamation demand, but then failed to seek court intervention to perfect that right.  As

the Bankruptcy Court held, the Bankruptcy Code is not self-executing.  Although § 546 does

not explicitly state that a reclaiming seller must seek judicial intervention, that statue does

not exist in a vacuum.  The mandatory stay as well as the other sections of the Bankruptcy

Code that protect and enforce the hierarchy of creditors create a statutory scheme that

cannot be overlooked.  Once Paramount learned that Circuit City planned to use the goods

in connection with the post-petition DIP Financing Facility, it should have objected.  It

didn't.  To make matters worse, Paramount then failed to object to Circuit City's liquidation

of its entire inventory as part of the closing GOB Sales.  Paramount was not duped by

Circuit City or the Bankruptcy Court into believing that compliance with the Reclamation

Order was all that was required.  Although unmentioned by Paramount, Circuit City's

Motion requesting the Reclamation Order also stated that because "Bankruptcy Code

section 546 does not include a waiver of the automatic stay protection afforded by

Bankruptcy Code section 362. . . ., the automatic stay prohibits reclamation efforts without

leave of court."  (R. on Appeal 18.)  That is not to say that the Court is entirely

unsympathetic to Paramount's predicament, however, that sympathy does not extend to

excusing Paramount's inaction during the Bankruptcy proceedings.  Accordingly, this Court

will affirm the Bankruptcy Court's conclusion that Paramount failed to diligently pursue its

reclamation rights and as a result forfeited them.

Given that conclusion, Paramount's additional arguments are moot.  Whether or not

the Bankruptcy Court erred by concluding Paramount's claim was "valueless" is irrelevant

because Paramount forfeited its claim by not diligently pursuing it.  Same goes with

Paramount's assertion that the Bankruptcy Court erred by concluding that the reclamation

right did not extend to proceeds and that Paramount was not entitled to further discovery.

As to Paramount's belief that it should be entitled to an administrative expense or lien, the

Court observes that Congress amended § 546 in 2005 by removing the requirement that an

administrative expense or lien be given if the court denies a reclamation claim.  Assuming

without deciding that Paramount is correct that bankruptcy courts still have the discretion

to grant an administrative expense post-BAPCPA, the Court sees no error in the

Bankruptcy Court's decision to deny one in a case such as this one where the reclaiming

vendor failed to diligently pursue its right of reclamation.

### IV. CONCLUSION

For the foregoing reasons, the Bankruptcy Court's decision is AFFIRMED.  An

appropriate order shall issue.

Let the Clerk send a copy of this Memorandum Opinion to all counsel of record.

It is SO ORDERED.

> _____/s/_____
> James R. Spencer
> Chief United States District Judge

ENTERED this  3rd  day of September 2010